Stephenson, J.
 

 At the outset it will be borne in mind that this relief association is not an old-line insurance company. It substantially fills the requirements of a mutual benefit association. The primary purpose of this arrangement of the Pennsylvania Railroad Company was to enable its employes to provide for those who had claims upon their bounty, and not for interlopers.
 

 In the instrument changing the beneficiaries we find the following language:
 

 “I, Charles M. Walcutt,
 
 *
 
 # * by virtue of application dated the seventeenth day of December, 1909,
 
 *453
 
 and numbered 194984, do hereby withdraw any designation of beneficiary heretofore made by me, and, in lieu and stead thereof, do hereby direct that, in the event of my death, after the execution hereof, any death benefit, payable by virtue of my membership in the said Belief Fund, shall be payable to my wife Marie Walcutt. And if any person now or hereafter designated by me to receive the death benefit shall not be living,
 
 or if there shall be no such person,
 
 the death benefit shall be payable as provided in the Begulations of the Belief Department for such event.”
 

 It will be noted that the word “designated,” not “named,” is used in this instrument. If “naming” were sufficient under this contract of insurance, then it would only have been necessary to have “named” Marie Walcutt. But this contract required Walcutt to “designate.” In other words, to point out the particular Marie Walcutt, to describe her so no mistake could be made. There might be a number of Marie Walcutts within a limited jurisdiction, depending, of course, upon the fecundity of the race. Again, there might not be another Marie Walcutt in the whole state of Ohio.
 

 The insured, at the time he made the change of beneficiary, was not so much interested in the name of any particular woman. He was interested in his wife. His wife at that time was Marie Walcutt, and he was making a provision “beyond the grave” for his wife. At the time this provision was made there was no one in the world who had a better right to it than Marie Walcutt; and when it became payable, at the death of the insured, there was no one had less right to it than she. Before the divorce, Marie Walcutt had an interest in Walcutt’s life, presumably. After the divorce she had no interest whatever in him, as a matter of law, so long as he lived. All her interest was cut off by the divorce.
 

 Is it right or equitable to permit her to assert a
 
 *454
 
 right to a .provision that must have been made for her on the assumption that the relation of husband and wife, which relation existed between her and Walcutt at the time she was made his beneficiary, would continue until death? This provision, as a matter of fact, was made for Marie Walcutt as the insured’s widow, not as his divorced wife.
 

 It is the policy of the law in many jurisdictions to treat a policy of life insurance as a testamentary disposition of property, in so far as the same can be done. 14 Ruling Case Law, 1368, Section 539.
 

 Inasmuch as the husband secured the divorce from Marie Walcutt, it must be presumed that it was granted upon her aggression. Under such circumstances, Section 11993, G-eneral Code, settled the property rights of the parties to this divorce when the decree was placed on record.
 

 Our sister state of Kentucky has on numerous occasions dealt with the legal problem here presented. There is a long line of consistent authorities in Kentucky to the effect that under a statute providing for the restoration of property rights on the granting of a final decree for divorce, where the policy of insurance designates the wife of the insured as beneficiary and the policy gives to the insured the right to change the beneficiary, a decree of divorce
 
 a vinculo
 
 divests the wife of any interest in the proceeds of the policy. We cite the last two cases passed on by the Court of Appeals of Kentucky, wherein this question was involved:
 
 Schauberger
 
 v.
 
 Morel’s Administrator,
 
 168 Ky., 368, 182 S. W., 198, Ann. Cas., 19170, 265;
 
 Western & Southern Life Ins. Co.
 
 v.
 
 Webster,
 
 172 Ky., 444, 189 S. W., 429, L. R. A., 1917B, 375, Ann. Cas., 1917C, 271. Reference to these cases will develop the fact that there is a long line of decisions in Kentucky bearing on this proposition.
 

 This court has had no occasion to pass on a case on all fours with this one. Walcutt, when he made the
 
 *455
 
 change of beneficiary, was dealing more particularly with a status than with a person. The
 
 descriptio personae,
 
 Marie Walcutt, together with the status, made a positive designation at the time Marie Walcutt was named as beneficiary; but the proceeds of this insurance could not vest until Walcutt died, at which time he had no wife. As was well said in the case of
 
 Order of Railway Conductors of America
 
 v.
 
 Koster,
 
 55 Mo. App., 186, “On the death of H. A. Koster the certificate, speaking for the first time, called for his wife and there was none to answer.”
 

 Joyce on Insurance (2d Ed.), Yol. 2, Section 818, seems to have collated the cases bearing on this question, and from it draws the following text:
 

 “The effect of divorce seems to be to terminate the relation of ‘wife’ under a mutual benefit certificate, so that if a wife is designated and she obtains a divorce, she loses her right to claim any part of the fund. This rule rests on the ground that the status of the beneficiary, being the sole inducement for the insurance, the object of the benefit is and always remains in the person filling that particular status, and the name, when given, is a mere descriptive designation.”
 

 The law as applied to mutual benefit associations operating under rules similar to those provided by the Pennsylvania Railroad Company in this case gives no heed to the proposition as to whether or not the beneficiary has an insurable interest in the life of the insured. The application and the policy, or certificate of insurance, make up the contract. Taking the contract by its four corners, it was the purpose of the Pennsylvania Railroad Company by means of this arrangement to hold out to Walcutt an opportunity to take care of those who had a rightful claim upon his bounty, in the event of his death. This arrangement was agreed to by Walcutt in his application.
 

 It is the holding of this court that at the time of the death of Charles Walcutt there was no one who could
 
 *456
 
 respond to the designation “my wife Marie ’Walcutt,” as contemplated by this contract of insurance.
 

 The judgment of the Court of Appeals is reversed and the judgment of the Court of Common Pleas is affirmed.
 

 Judgment of the. Court of Appeals reversed and judgment of the Court of Common Pleas affirmed.
 

 Weygandt, C. J., Day, Allen, Jones and Matthias, JJ., concur.
 

 Kinkade, J., not participating.