HERDMAN *v.* MCCORMICK ET AL.

[No. 16,792. Filed April 15, 1942.]

170

*James O. Ballou* and *James P. Murphy*, both of Fort Wayne, for appellant.

*Paul G. Jasper* and *Otto E. Grant,* both of Fort Wayne, for appellees.

STEVENSON, J.—The appellees brought this action against the appellant, Mildred Herdman, The Pennsylvania Railroad Voluntary Relief Department, and the Pennsylvania Railroad Company.

The complaint alleged that the appellees, Anna B. McCormick and Frank McCormick, were the parents of

Mack E. McCormick, who was employed by the Pennsylvania Railroad Company on the 11th day of October, 1939. On this date, the Pennsylvania Railroad Voluntary Relief Department issued a policy of membership to the said Mack E. McCormick, which policy of membership conferred certain benefits upon persons therein named in the event of the death of the said Mack E. McCormick. This policy contained a paragraph, which reads as follows: " 'Unless I shall otherwise designate, in writing, with the approval of the superintendent, death benefit shall be payable to My Wife Mildred McCormick.' " The complaint alleged that in addition to this provision the policy contained the further provision as follows:

> " 'And if any person now or hereafter designated by me to receive the death benefit shall not be living, or shall be incapacitated for executing the requisite receipt and release, *or if there shall be no such person*, the death benefits shall be payable as provided in the regulations of the relief department for such event.' "

The complaint alleged that the regulations referred to in the last quoted paragraph provided for the payment of death benefits: First, to the beneficiary or beneficiaries designated in the policy; second, if there be no such designated beneficiary living at the member's death, then payment shall be made to the wife of the member; third, if there be no wife, the payment shall be made to the children of the member; and, fourth, if there be no children or descendents of children, then the benefits shall be paid to the father and mother of the member.

The complaint further alleged that on the 19th day of February, 1940, the said Mildred McCormick was divorced from Mack E. McCormick, and her maiden name of Mildred Herdman was restored to her.

The complaint further alleged that on the 23rd day of February, 1940, the said Mack E. McCormick was fatally injured, and died on the 24th day of February, 1940. The complaint alleged that at the time of the death of Mack E. McCormick there was no such person as the beneficiary designated in said policy, nor was there any wife or children or issue thereof living at the time of the death of Mack E. McCormick. The appellees accordingly asked that the death benefits to the amount of $800.00 be payable to them as parents of the deceased.

The Pennsylvania Railroad Company and the Pennsylvania Railroad Voluntary Relief Department appeared to this action and filed a petition asking permission to pay the money into court. This petition was granted and the money was accordingly paid into court.

The appellant filed a demurrer to this complaint; which demurrer was overruled. The appellant refused to plead further and the court accordingly entered judgment in favor of the appellees. From this judgment, the appellant has appealed; and the error assigned in this court is the alleged error in overruling her demurrer to the appellees' complaint. Under this assignment the appellant contends that the fact that she procured a divorce from the insured prior to his death does not operate to deprive her of the benefits of the policy as the designated beneficiary. The appellant contends that in such cases, a wife designated as a beneficiary remains a beneficiary so as to be entitled to the proceeds of an insurance contract, even though the wife divorces the husband, there being no statute, by-law or contract provision to the contrary. The appellees, on the other hand, contend that at the time of the death of the said Mack E. McCormick there was no such person in existence as the designated beneficiary, and under

the terms of the policy, "if there shall be no such person," the death benefits are payable to the persons designated in the regulations set forth in the policy.

The appellant relies on the authority of *Farra* v. *Braman* (1909), 171 Ind. 529, 86 N. E. 843, to sustain her position that the dissolution of the marriage relation existing between her and insured at the time she was designated as his beneficiary does not bar or deprive her of the right to receive the insurance money. This case involved the interpretation of a contract issued by the Voluntary Relief Department of the Pennsylvania Railroad, and the facts involved are quite similar to the case at bar. In the case of *Farra* v. *Braman, supra,* at p. 537, the application for membership contained this statement: "Death benefits *'shall be payable to my wife, Eva J. Ried, of Ft. Wayne, Indiana, if living at the time of my death and not withdrawn as my beneficiary, or to such person or persons as I shall subsequently duly designate in writing* in substitution therefor, with the approval of the superintendent of the relief department.'" The insured was divorced from the beneficiary, Eva J. Ried, and the insured subsequently remarried. The beneficiary in his insurance contract was not changed, however, and our Supreme Court said, pp. 543, 546:

> "It may be conceded that by the divorce in question the relation of husband and wife was terminated, and the wife was no longer a relative or dependent of her former husband, and in the event of his death could not in any sense be regarded as his heir; but it does not follow that from the mere fact of the divorce alone she was thereby disqualified as a beneficiary and deprived of the benefits provided for by the insurance certificate. Of course, the relief department might have provided, either in the contract of insurance or in its by-laws, rules and regulations, that in the event

the wife of the insured, whom he had designated as his beneficiary, should be divorced from him, such divorce should terminate her rights as a beneficiary and deprive her of the death benefits. This, however, was not done, for we discover no provision to that effect, either in the application, certificate, by-laws or regulations of the department."

". . . The fact, that the conjugal relations existing between her and her former husband at the time she was designated as his beneficiary had been thereafter severed by a divorce, prior to the maturity of the policy, did not, under the governing rules, by-laws and regulations of the relief department, render her ineligible as such beneficiary, bar or deprive her of the right to receive the insurance money paid into court by the relief department upon the certificate of insurance."

In the case at bar, however, a different provision has been inserted in the application and certificate. This provision reads as follows:

"Unless I shall otherwise designate, in writing, with the approval of the superintendent, death benefit shall be payable to My Wife Mildred McCormick. And if any person now or hereafter designated by me to receive the death benefit shall not be living, or shall be incapacitated for executing the requisite receipt and release, *or if there shall be no such person,* the death benefits shall be payable as provided in the regulations of the Relief Department for such event."

It will be noted from a reading of the above provision that there are three conditions which might operate to change a designated beneficiary, without such change having been designated in writing by the insured. These conditions are as follows: (1) In the event the designated beneficiary should not be living; (2) in the event the designated beneficiary should be incapacitated; and, (3) in the event there should

be no such person.  The question, therefore, presented is whether or not the divorce granted to Mildred McCormick and the restoration to her of the name of Mildred Herdman, which took place five days before the death of the insured, makes applicable the provision in the policy which automatically changes the designated beneficiary.  In other words, on the 24th day of February, 1940, when Mack E. McCormick died, was there such a person as "My Wife Mildred McCormick"?

This identical question was before the Supreme Court of West Virginia in the case of *Huff* v. *Railway Co.* (1927), 104 W. Va. 464, 140 S. E. 335, 59 A. L. R. 167. The court said, pp. 468, 469:

"A consideration of the purpose of this Relief Department of the railway company and the regulations governing it, impel the conclusion that the primary object of the Department was to provide benefit funds for the relief of the insured, his family and his dependents.  It is true that there is no express provision so restricting the beneficiaries of the insured, but the regulations taken as a whole make it apparent that such was the purpose of the Relief Department.  The requirement that the beneficiary must have an insurable interest; that the designation of a beneficiary must be approved by the Superintendent of the Relief Department; and the regulation describing the manner in which death benefits shall be paid, are indicative of the intent to restrict the beneficiaries in the main to members of the insured's family or to those dependent upon him for support.  We do not mean to say by this that a creditor of the insured could not be made a beneficiary.  But, excluding that one possible exception, the rules of the Relief Department must be interpreted as confining the beneficiary to the classes above noted.

"Bearing in mind the primary object and purpose of this Relief Department of the railway company, it becomes evident that the insured in designating his wife, Leona, as his beneficiary had reference to her not merely as an individual but as

occupying the status of wife. The status was the main inducement for the designation. And where this is so, although there is eminent authority to the contrary, the better rule would seem to require that in the case of mutual benefit associations of this character, the status must exist at the time of the death of the insured."

The court accordingly held that in naming the beneficiary in his application as "my wife, Leona," the insured intended that Leona should receive the benefits if she was his wife at the time of his death. Upon the dissolution of such status, there was in effect no such person as was designated by the insured who could receive the benefits conferred by the policy.

The exact provision in the case at bar was before the Supreme Court of Ohio in the case of *Fitzgibbon, Admr.*, v. *Walcutt* (1933), 126 Ohio St. 450, 185 N. E. 837. In this case, the board was considering a policy of the Relief Association of the Pennsylvania Railroad Company. The insured had designated that death benefits "shall be payable to my wife Marie Walcutt." A divorce was subsequently granted, and at the time of his death the insured was unmarried. The court said, pp. 453, 454:

"It will be noted that the word 'designated,' not 'named,' is used in this instrument. If 'naming' were sufficient under this contract of insurance, then it would only have been necessary to have 'named' Marie Walcutt. But this contract required Walcutt to 'designate.' In other words, to point out the particular Marie Walcutt, to describe her so no mistake could be made. There might be a number of Marie Walcutts within a limited jurisdiction, depending, of course, upon the fecundity of the race. Again, there might not be another Marie Walcutt in the whole state of Ohio.

"The insured, at the time he made the change of beneficiary, was not so much interested in the name of any particular woman. He was interested in

his wife. His wife at that time was Marie Walcutt, and he was making a provision 'beyond the grave' for his wife. At the time this provision was made there was no one in the world who had a better right to it than Marie Walcutt; and when it became payable, at the death of the insured, there was no one had less right to it than she. Before the divorce, Marie Walcutt had an interest in Walcutt's life, presumably. After the divorce she had no interest whatever in him, as a matter of law, so long as he lived. All her interest was cut off by the divorce.

"Is it right or equitable to permit her to assert a right to a provision that must have been made for her on the assumption that the relation of husband and wife, which relation existed between her and Walcutt at the time she was made his beneficiary, would continue until death? This provision, as a matter of fact, was made for Marie Walcutt as the insured's widow, not as his divorced wife."

We recognize the rule that in the absence of a controlling statute or by-law, or some contract provision on the subject, the designation by name of the wife of a member of a fraternal benefit order is not abrogated *ipso facto* by a subsequent decree of absolute divorce granted the wife. Cyclopedia of Insurance Law, Couch, Vol. 2, § 440i. This is the rule upon which the Supreme Court based its decision in the case of *Farra* v. *Braman, supra.* But since this decision, the Voluntary Relief Department of the Pennsylvania Railroad has changed its contract provisions, with respect to a change of beneficiary. This contract now contains three conditions, the happening of any one of which operates to cast the benefits on the parties mentioned in the rules and regulations. The first condition, which destroys the right of the designated beneficiary, is that she should not be living. The second condition, which destroys the right to these benefits,

is that she should be incapacitated. This means, that even though she might be living and still his wife, her insanity would prevent her from receiving the benefits of this insurance. The third condition is predicated upon still another change in legal status. This is described as the eventuality wherein there shall be no such person. Clearly, this does not refer to the change occasioned by physical death. Clearly, it does not refer to legal incapacity. It follows, therefore, that the expression must refer to some other change in legal status.

By the contract of insurance, the Voluntary Relief Department agreed with the insured to pay to his wife, Mildred McCormick, the benefits stipulated, in the event of his death. For the purposes of this case, we may say that they further agreed to pay these benefits to the insured's father and mother, the appellees herein, in the event the person designated by him should not be living. They further agreed to pay the appellees these benefits, if his wife, Mildred McCormick, should be legally incapacitated to receive the same, at the time of his death. They further agreed to pay these appellees these benefits, if there should be no such person as his wife, Mildred McCormick, at the time of his death.

So far as the insured was concerned and under the common and ordinarily accepted meaning of the term, there was no such person as "My Wife Mildred McCormick," on the day Mack E. McCormick met his death. The person whom Mack E. McCormick had designated in his contract of insurance as "My Wife Mildred McCormick" was not dead, neither was she incapacitated to execute a release. But she had ceased to exist in the status designated in the contract of insurance; she was neither the wife of the insured,

nor was she Mildred McCormick. In legal effect, there was no such person as the designated beneficiary, at the time of the death of the insured.

Since it is our duty to give full force and effect to all contractual provisions of a policy of insurance, it is our opinion, that the trial court did not err in holding that this appellant was precluded from any interest in the death benefits because of this contract provision.

There was accordingly no error in overruling the demurrer to the appellees' complaint. Finding no reversible error, the judgment of the trial court is affirmed.

Judgment affirmed.

NOTE.—Reported in 40 N. E. (2d) 1009.