# CHARLESTON.

JOSEPH RUFFNER et al. v. E. FONTAINE BROUN et al.

Submitted March 11, 1919.   Decided March 25, 1919.

1. POWERS—''Written Instruments Signed, Sealed and Acknowledged''—Holographic Will.

A power of appointment to be exercised by .''a written instrument signed, sealed and acknowledged'' is well executed by a holographic will of the person in whom the power was vested, making disposition of the subject matter thereof, by virtue of sec. 4 of ch. 77 of the Code.   (p. 693).

2. SAME—Execution—''Written Instrument Signed, Sealed and Acknowledged.''

It being doubtful whether such a power included in the general terms of said statute can be excepted from their operation, upon any ground recognized by the rules of construction, and the statute itself having been adopted by the legislature of Virginia from the English Wills Act, 1 Vict. ch. 26, sec. 10, before the organization of this state, and after it had been construed by an English court, as authorizing execution of a power of appointment so given by will, without compliance with prescribed formalities beyond those required by the statute, it is held to be within the statute, notwithstanding subsequent English decisions to the. contrary. (p. 693).

(WILLIAMS, JUDGE, dissenting).

Appeal from Circuit Court, Kanawha County.

Suit by Joseph Ruffner and others, executors, etc., against E. Fontaine Broun and others.   From the decree defendants Maria Broun and others appeal.                    Affirmed.

Leo Loeb, for appellants.

W. G. Mathews, E. B. Dyer and Morgan Owen, for appellee, E. Fontaine Broun.

Malcolm Jackson, for applees Ann Conway Powers and others.

POFFENBARGER, JUDGE:

If the trusts created by one of the deeds hereinafter described were impliedly revoked and annulled by the exercise

of the power of' appointment reserved in it to the grantor there will be no occasion for consideration of the many as signments of error founded upon theories of construction o that deed. The legal basis of the decree giving effect to th will purporting revocation of the trusts, against which th appellants claim title, is not indicated. The learned judge o the trial court may have treated the execution thereof a having wrought such revocation, or he may have construe the deed as having vested complete beneficial ownership o the lands conveyed by it in the grantor, by reservation, an made it possible for him to devise them without having r voked the trusts. Both grounds are urged by counsel fo the appellees, in resistance of the attack upon the decre appealed from.

By a deed dated, Jany. 14, 1903, Thomas L. Broun an Mary M. Broun, his wife, conveyed to Fontaine Broun an Angus W. McDonald, Trustees, certain real estate situate in Boone and Kanawha counties, and consisting of a tract o 2,000 acres and undivided interests in several other tract equivalent in all to about 5,000 acres, upon the followin terms; for the use and benefit of the wife for the joint liv of herself and her husband; the husband for his life, in ca he should survive the wife; their three children in fee, sul ject to a provision for the wife, in case she should survive th husband; the children in fee without incumbrance, afte the death of the husband, he having survived the wife, an McDonald, Trustee, being required equally to convey th land to one of them and trustees for the others.

This deed, however, contained indisputable powers of rev cation and appointment, which the husband, after the deat of his wife, admittedly and effectively exercised by joinin one of the trustees, Angus W. McDonald, in the execution o another deed, dated June 10, 1911, by which the land granted by the deed of January 14, 1903, and other land making an aggregate of about 10,000 acres, were conveye to four trustees, E. Fontaine Broun, Charles M. Brou Philip S. Powers and C. Beverly Broun. In this deed, h was the party of the first part, Angus W. McDonald, Truste

arty of the second part and the four trustees just named, arties of the third part. It recited the powers of revoca- ion and appointment reserved by the former deed and con- eyed the lands granted by it from Angus W. McDonald, Trustee, to Thomas L. Broun, by direction of the latter, who hen made the conveyance to the parties of the third part; n four equal parts, subject to reservations, for the use and enefit of his three children and numerous collateral relatives, ne undivided fourth going to each child and the other to the ollateral relatives. He reserved an estate in the lands for is life, with power to sell timber on them and to lease them or coal, oil, gas and other minerals, or for any purpose vhatsoever, and to apply the proceeds to his own use or to uch other uses as he might desire, or as by his will he night designate, and to subject the land, timber and min- rals to any and all charges he might see fit to make by his ast will and testament. This deed also contained a reserva- ion of power to revoke and appoint, reading as follows: "But this conveyance and each and every trust, use, bene- t, and estate hereinbefore declared, created or set forth, is pon and subject to the express condition and understand- ng that the said Thomas L. Broun, may, for his own bene- t, and for the benefit of any person or object he may select, t any time, and as often as he shall see fit, and according o his will and pleasure, by a written instrument, signed, ealed and acknowledged by him, revoke, annul, alter, amend r make any substitution for the trusts, uses, benefits, and the states hereinbefore declared or set forth, or any part hereof, either as to the whole of said real estate or any art thereof."

By an instrument signed, sealed and acknowledged by im and dated, May 8, 1912, Thomas L. Broun made some lterations of the deed of April 10, 1911, among which was ne giving his collateral kindred only proceeds of the sale f the lands and timber and rentals and royalties arising rom the lands. Charles M. Broun, Philip S. Powers and E. Fontaine Broun, Trustees, were given title to all of the and, but C. Beverly Broun, Trustee, was authorized to eceive one-fourth of the proceeds of sales of land and tim-

ber and the rents and royalties for distribution among th
.collateral kindred.    This instrument repeated the reserv
.tion of power of revocation and appointment.    It also pr
vided that all donations, contributions and bequests mad
by any will or any codicil of said Thomas L. Broun shoul
be parts of the deed of April 10, 1911.

Under the reservations of power above mentioned, Thoma
L. Broun either revoked the powers of the trustees and ma
terially altered the dispositions of property made by th
deed of April 10, 1911 and the instrument dated, May
1912, or modified them as to such dispositions, without abr
gation of the powers of the trustees, by his will appointin
Joseph Ruffner and Robert E. McCabe executors and givin
all of the lands to Louise Fontaine Jackson, Edward Fo
taine Broun and Ann Conway Powers, his three childre
The will was dated, August 13, 1913, and admitted
probate, March 30, 1914.

That the power reserved could be exercised either by wi
or by deed is put beyond question by the authorities.    Th
designated means of execution thereof is "a written instr
ment signed, sealed and acknowledged."    That may
either a will or a deed, for both are written instrument
A will need not always be acknowledged, but it may be ar
sometimes must be.    Code, ch. 77, sec. 3.    There is langua
in the reservation clause that may import intent to r
quire execution of the power by an instrument taking e
fect in the lifetime of Thomas L. Broun, which would e
clude right to execute it by a will taking effect at the m
ment of his death; but such a limitation would arise on
by implication, an unnecessary implication which the rul
of construction do not permit.    *Graham* v. *Graham,* 23 V
Va. 36, 38; *Beard* v. *Beard,* 22 W. Va. 130, 136; *Earle*
*Coberly,* 65 W. Va. 163; *Boisseau* v. *Aldridges;* 5 Leigh 22
*Southerland* v. *Sydnor,* 84 Va. 880.    "The mere questi
whether a will comes within the words instrument in wri
ing has long ago been decided in the affirmative, and the
is neither decision nor *dictum* throwing any doubt on that
Sir R. T. Kindersley, V. Chancellor, in *Orange* v. *Pickfor*
4 Drew. 363, 62 Eng. Reprint, 140.    "If a power be creat

be executed by a deed or instrument in writing, although he words seem to indicate instruments *inter vivos* only, et it is settled that it may be well executed· by will.'' Lord hancellor Westbury in *Taylor* v. *Meads,* 4 De G. J. & S. 07, 46 Eng. Reprint, 1050. ''It is quite well settled that power to be executed by an instrument in writing may be ecuted by a will, that being an instrument in writing.'' ord Romilly, M. P. in *Smith* v. *Adkins,* L. R. 14 Eq. Cas. 02. A power to revoke by any writing under hand and seal d to appoint new uses by the same or any other deed is ell executed by a will. *Countess of Roscommon* v. *Fowke,* cided on appeal by the High Court of Parliament, 6 Bro. 8, 2 Eng. Reprint, 998.

Whether a power to be executed by an instrument in writ-g could be well executed by a will, without compliance th requirements as to form and solemnity beyond those posed by the statute of wills, has been decided both affirm-ively and negatively in England. In *Buckell* v. *Blenkhorn,* Hare 131, 67 Eng. Reprint 857, and *Collard* v. *Sampson,* Beav. 543, it was held that the power could be· so exe-ted. Upon an appeal, the latter was reversed by a judg-nt delivered by Lord Justice Turner, 4 De G. M. & G. 4, 43 Eng. Reprint 493. About a year later, 1854, the estion arose again in *West* v. *Ray,* Kay 385, 69 Eng. print 163, and was negatively disposed of. This was fol-ved by a like decision in *Taylor* v. *Meads,* 4 De G. J. & 597, 46 Eng. Reprint 1050. There can be no doubt, there-e, that the present English construction of the statute cludes the operation of this will as an exercise of the wer, if acknowledgment of the instrument is a substantial uirement and has not been complied with. The will is ned and sealed but it bears no certificate of acknowledg-nt or other proof thereof.

Sec. 4 of ch. 77 of our Code is substantially the same as . 10 of the English Wills Act. 1 Victoria, ch. 26. Our tute was taken from the English Wills Act, after the de-on in *Buckell* v. ·*Blenkhorn,* rendered in 1846 and before t rendered in *Collard* v. *Sampson* on appeal, in 1853. It s incorporated into the Virginia Code of 1849. Hence,

strictly speaking, it was borrowed and adopted as construe
in *Buckell* v. *Blenkhorn,* and falls within the rule that
statute borrowed from another jurisdiction is to be taken
the sense of the construction put upon it in the foreign ju
isdiction, at the date of its adoption.    The later English d
cisions giving it a different construction are merely pe
suasive.    *N. & W. Ry. Co.* v. *Old Dom. Baggage Co.,* 99 V
111; *Danville* v. *Pace,* 25 Gratt. 1; *Doswell* v. *Buchanan
Ex'rs.,* 3 Leigh 365, 379.

The rule of construction just referred to rests upon pr
sumption, of course, and may not be absolutely binding up
the courts of the adopting state.    In the case of the adopti
of a statute of a foreign jurisdiction before its constructi
has been fully determined by the courts of such jurisdicti
there might be good reason for adoption of the constructi
ultimately and finally put upon it by the courts of its orig

There is some technical force in the later English decisio
repudiating the doctrine of *Buckell* v. *Blenkhorn.*  Wills, i
powers of appointment, constitute the subject matter
the statute.    The latter fall within the scope of the act,
so far only as they are created by will or susceptible of e
cution by will.  Powers not created by will nor suscepti
of such execution do not fall within it at all, either who
or partially.    Being in derogation of the common law a
in restraint of liberty, the statute falls under the rule
strict construction.    Although these two propositions
not referred to in the opinions, the great jurists who r
dered the decisions evidently had them in mind and foun
their conclusions largely upon them.    In *Collard* v. *Samps
Lord Justice Turner said:    "The question is, what is
meaning of the words 'power of appointment by will,'
tained in that section—whether it embraces every case
which a power of appointment may be exercised by will
applies only to cases in which the power is in terms giver
be so exercised.    The language of the Act leaves this p
in doubt."    After having shown that the interpreta
clause of the act defined the word "will" as includin
power of appointment by testament or codicil, or writing
the nature of a will, he said: "But the Act goes no furt

Everything beyond this is left to judicial determination.'' Then having determined that the terms creating the power were broad enough to permit execution thereof by will, but did not specifically authorize such execution, he proceeded as follows: ''The power mentioned in the statute is therefore included in the power given by the instrument before us, but it does not seem to me to follow, that because the power mentioned in the statute is included in the power given by the instrument, the power given by the instrument, is therefore a power to which the statute was intended to apply. It would be difficult, I think, to say that a power to appoint by will or other writing, is the same thing as power to appoint by a will or codicil, or writing in the nature of will.'' Vice-Chancellor Sir W. Page Wood based the decision in *West* v. *Ray* upon the same ground and concluded his opinion with these words: ''The donor might well say, I have not made any direction at all as to a will, and therefore my case is not within the statute. It may be that it was a matter of indifference to me whether the exercise of the power should be by will or not; but it was of the essence of my direction that it should be done with certain solemnities. Where the instrument is a matter of form and the required solemnities are the substantial requisites, is not the same case as where the instrument is the substance of what is required by the power and the solemnities are the accessories, which is the state of circumstances to which the statute applies.' I regret to come to this conclusion, because, when persons fetter themselves with these forms, instead of saying simply that the appointment should be by deed or will, which would in most cases fulfill every purpose, they often disappoint themselves; or when they wish to give a power of appointment to third persons they frequently by these means disappoint the object of all parties. The Legislature has made a provision for the evil in cases of wills; but I think that it does not extend to the case where the power requires not a will but an instrument with certain formalities different to those observed in the execution of a will. The distinction is no doubt narrow; for if the power had been to be executed by a 'writing testamentary or other-

'wise,' then the case would have fallen within the statute but in that case the donor would have made a will of th substance of the case, and then the provisions of the statut would apply." In *Taylor* v. *Meads,* Lord Westbury merel adopted the conclusion arrived at in *West* v. *Ray.* He sul mitted no argument to sustain it and invoked no rule principle of construction, in support of it.

On the other hand, Sir James Wigram, in *Buckell Blenkhorn,* expressed the opinion that execution of such power by will was clearly within the statute. His coge reasoning follows: "Now, by the late Statute of Wills it provided that in the execution of wills one given form sha be observed, and that such form shall be an equivalent fe every arbitrary form of execution which the donor of power may prescribe. It was not at the expense, but favor and for the benefit of such donors, and in order th their intentions might not be disappointed by the neglect useless forms that this legislative provision was made. must presume, in this case, that Sarah M'Lauchlin made th deed of the 1st of September 1843 with knowledge of t decisions upon the word 'writing,' and with knowledge al of the provisions of the Wills Act. Why, then, should deprive her of the benefit of the Act, for that is what I a asked to do? I am asked to deprive certain objects of h bounty of the gifts she intended for them, only because form has not been observed which the Legislature has clared to be useless. What reason then is there for sayi that a will shall not, since as well as before the statute, deemed a writing within the terms of the deed? If the t tatrix had used the word 'will' instead of the word 'wr ing,' the statute would equally have applied."

The conclusion expressed in *Buckell* v. *Blenkhorn* is m ifestly permissible under the rule of strict constructio Lord Justice Turner admits, in *Collard* v. *Sampson,* th the power mentioned in the statute is included in the po given by the instrument. Sir James Wigram, in the ot case, says a decision against the validity of the execution will would be "against the spirit and policy, as well against the letter, of the Act." What falls within both

spirit and letter of the statute is deemed, under that rule, to have been within the legislative intent. *Bank* v. *Thomas,* 75 W. Va. 321; *Harrison* v. *Leach,* 4 W. Va. 383; *Davis* v. *Com.,* 17 Gratt. 617; *State* v. *Stephenson,* 2 Bailey (S. C.) 334, 335; *United States* v. *Hartwell,* 6 Wall. (U. S.) 385, 395. Nor does the rule of strict construction restrict the operation of terms actually used in a statute to their narrowest meaning, or to any particular meaning. *United States* v. *Winn,* 3 Sumn. (U. S.) 209; *United States* v. *Hartwell,* cited. As in other cases, the meaning of the words is to be determined in the light of the subject matter and the context. The only absolute limitation upon the operation of a statute strictly construed is lack of terms expressing intent. This does not always obtain in the application of the rule of liberal construction. Under the former rule, what is authorized or forbidden must be within both the spirit or purpose of the act and its terms, while, under the latter, it sometimes suffices that it be within the spirit or purpose only. Execution by will, of a power exercisable by an instrument in writing, admittedly comes within the requirements of that rule.

Though wills and codicils, not deeds or other instruments, constitute the subject matter of the statute, the execution of powers of appointment by will is expressly included. The uncertainty is limited to the extent of such inclusion. It-is not expressly defined, and the context does not necessarily limit it. The first clause of the section is broad enough in its terms to include any power that can be exercised by a will. It says no appointment made by will, ''in the exercise of any power,'' shall be valid, unless etc. The second clause is not definitive of the instrument or provision vesting the power. While it mentions ''a power of appointment by will,'' its terms do not even suggest the necessity of the creation of such a power in specific, as contradistinguished from general, terms, and one created by the use of general terms is as valid and effective as one specifically conferred. Hence, the statute seems grammatically, logically and legally to include both cases. Of course, as suggested and held, there is a difference, but that difference is not made the ground of

any express or necessary exception. Besides, the uniform holding that a power so given as to be exercisable by an instrument in writing, could be validly executed by will, must have been known to the Parliament and also to the Virginia General Assembly, when the statute was enacted.

To say the legislature has not provided for the case in question necessarily narrows and restricts the meaning and operation of the terms of the act. The judicial observations of lack of provision, therefore, necessarily mean no more than that the act has made no specific provision for it. Such provision was wholly unnecessary and would have been unusual, in the absence of some principle of public policy or rule of construction working an exception from the operation of the general terms of the act, by implication. No such principle or rule is invoked in any of the decisions overruling *Buckell* v. *Blenkhorn.* To give the statute effect commensurate with the extent of its general terms does not permit it perceptibly to innovate upon the law of deeds or other instruments. In case of the execution of such a power by deed, all of the prescribed formalities and solemnities must be complied with. Nothing is abrogated except in the case of execution by will, and that falls directly within the terms of the statute and constitutes part of its subject matter. It places no restraint upon the liberty of the creator of the power for he may always limit the mode of execution to a deed or other instrument operating *inter vivos,* and, if he does not, he may well be presumed to have intended to place it under the operation of the statute. While the distinction between the form of the instrument of execution and the solemnities thereof, marked by Sir W. Page Wood, in *West* v. *Ray,* is a perfectly obvious one, it does not profess to stand upon any recognized ground of implied exception from the operation of the general terms of a statute. Some of these grounds, as defined by the English and American decisions, are briefly stated in *Conley and Avis* v. *Coal & Coke R'y. Co.,* 67 W. Va. 129, syl. pt. 27, in the following terms: "In determining the meaning of a statute, it will be presumed, in the absence of words therein, specifically indicating the contrary, that the legislature did not intend

to innovate upon, unsettle, disregard, alter or violate, (1) the common law; (2) a general statute or system of statutory provisions, the entire subject matter of which is not directly or necessarily involved in the act; (3) a right or exception based upon settled public policy; (4) the constitution of the state; nor (5) the Constitution of the United States." An obvious and radical difference in the nature of the thing excepted from one named in the statute, constitutes another ground.

The express terms of this act rebut the presumption against intent to alter the common law as to the execution of powers of appointment given to be exercised by will, whether so given in definite and specific terms or in general terms. The reasons of public policy impelling the enactment of the law apply with equal force to both classes of powers of appointment by will. The evil remedied by the act is the same in each class, as Sir W. Page Wood admitted in his opinion in *Collard* v. *Sampson.* Omission to relieve from compliance with useless and harmful formalities, in the execution of powers of appointment otherwise than by will, signifies intent not to deal with the subject of execution of powers generally, but it does not import intention to restrain the general terms of the statute to one class of powers susceptible of execution by will. Nor is there any marked difference between the nature of a power given in general terms to be executed by will and one given in specific terms to be so executed. They differ only as to the forms of expression, the language, in which they are created. Each is a power susceptible of execution by will. When executed, each produces exactly the same legal result. If the power is given, in express terms, to be executed by deed or by a will made with solemnities not required by the statute, it can be executed by will without compliance with such solemnities. If it is conferred in general terms broad enough to permit both kinds of execution, the words used do not indicate any intention to require such compliance, nor do they point out any circumstance tending to give the instrument a different nature.

Although this question seems never to have been decided

by the House of Lords, the court of last resort in England, the conclusion stated in the later decisions referred to may well be taken as settled law in that jurisdiction. There has been a general acquiescence in it for a great many years. The later construction adopted has not called forth any amendment of the act. Hence, it may be justly inferred that the bench, bar and legislature are satisfied with it. If, in our opinion, it were clearly and firmly sustained by any definite rule or principle of construction and the legislature of Virginia had not adopted it as formerly construed in England, we would be constrained to give it our assent and hold the power not to have been well executed. But, in view of our doubt of its soundness when examined in the light of the rules of interpretation and construction, and the adoption of the statute as previously construed, we hold the will to have been a valid execution of the power, and affirm the decree complained of.

*Affirmed.*

WILLIAMS, JUDGE, *dissenting:*

I do not think a power of revocation and re-appointment, to be executed "by a written instrument, signed, sealed and acknowledged," is executed properly by a holograph will, not so signed, sealed and acknowledged. By the common law the mode prescribed for the execution of the power must be strictly pursued; if it is to be exercised by will only, a deed will not answer, and *vice versa.* 2 Min. 741, and *Williamson* v. *Beckham,* 8 Leigh 20. If Mr. Broun's will had been sealed and acknowledged, it would have been a literal compliance with the condition, for even though it was testamentary in character, it would also have been the kind of a writing designated. But not being acknowledged, it is not such a writing as the donor had prescribed. The court has no right to imply that the acknowledgment is an immaterial requirement that can be dispensed with. There having been no express provision for a revocation and re-appointment *by will,* I do not think section 4, chapter 77, Code, has any application, for the reason stated by Lord Justice Turner in *Collard* v. *Sampson,* and quoted in the majority

opinion. I think the later English decisions, and not the case of *Buckell* v. *Blenkhorn,* which the opinion has followed, furnish the correct interpretation of the statute.