329 S.E.2d 74

The **FIRST NATIONAL BANK OF BLUEFIELD, Executor Under the Last Will and Testament of Jesse S. Groseclose, Deceased**

v.

**Ulysses D. CUNDIFF, Martha Cundiff, Westminister Presbyterian Church, Masonic Trust-Lodge # 85, Masonic Trust-Scottish Rite Chapter, Westminister Presbyterian Church-Teaching Bible School, Clyde Vaught, Charles Vest, Thelma Johnson, Sidney Smothers, Betty Miller Blankenship, Heirs of Ethel Hamilton, Charles Groseclose, Hallie Bell Wagner, Julia G. Coleman, Mark Cundiff, Joseph Cundiff, Laura Cundiff, Thomas Parker, Christy Parker, Ann Liza Parker, Nellie Williams, Johnnie Romans, Betty Romans, Mrs. Lena G. French, Mrs. Madge Richardson, Heirs of Mrs. Clara Lewis, Mrs. Dorothy Wood, Montreat-Anderson College, Bluefield College, David Stuart School, Pastor's Anniversary Reliable Joy Gift, Salvation Army, YM–YWCA, Union Mission, Bluefield Community Hospital, and Shriner's Crippled Childrens Hospital, and any and All Per-**

sons, Other Than Those Named In the Petition As Petitioner and Respondents, Interested In the Subject Matter of the Action, Whose Names Are Unknown to the Petitioner and Who are Made Respondents by the General Description of Unknown Respondents.

No. 16220.

Supreme Court of Appeals of West Virginia.

April 11, 1985.

Rehearing Denied June 11, 1985.

Veneri & Burkett, Billy E. Burkett, Princeton, for appellant Charles Groseclose, et al.

Katz, Kantor & Perkins, G.W. Lavender, II, Bluefield, for appellee First Nat. Bank.

Burton & Cunningham, Chas. T. Cunningham, Princeton, for Cundiffs.

Hudgins, Coulling, Brewster & Morhous, Donald T. Caruth, Bluefield, for T. Johnson & Bluefield College and Mission.

Kwass, Stone, McGhee & Feuchtenberger, J.W. Feuchtenberger, Bluefield, for other appellees.

PER CURIAM:

This action is before this Court upon appeal from the judgment order of the Circuit Court of Mercer County, entered September 20, 1983. The action below was commenced by the First National Bank of Bluefield, the appellee, seeking a declaratory judgment concerning the validity and construction of a purported will of the decedent, Jesse S. Groseclose. In their answer to the action for declaratory judgment, certain heirs of the decedent, the appellants in this action, challenged the validity of the will on a variety of grounds. The circuit court appointed a commissioner to hear the matter. The court adopted the findings of fact and conclusions of law of the commissioner in which he determined, *inter alia*, that the questioned documents were the valid last will and testament of the decedent and that the property devised and bequeathed therein should be distributed in accordance with the commissioner's findings.

The decedent died in December, 1981. A few days later, with certain bank officers and relatives in attendance, the decedent's safe-deposit box was opened. There were various items in the box including the purported will.

The purported will is composed of a total of eight sheets of paper. The first sheet is, for the most part, a printed form with the heading "WILL." The blank spaces on the form are completed with what is undisputed to be the decedent's handwriting. The appellee bank and one of its officers, which bank officer was also a witness to the decedent's signature and specifically named as a purported beneficiary in the latter documents, were nominated in the decedent's handwriting to be executors of his estate. In most of the blank spaces upon the form, where the testator may

name the beneficiaries of his property, appear the handwritten words "See list attached." The form is signed "Jesse S. Groseclose" and the typewritten date of the decedent's signature is August 9, 1978. At the bottom of this form are the signatures of three witnesses. The handwritten date of the witnesses' signatures is August 11, 1978. The witnesses to the decedent's signature who testified before the commissioner both indicated that there were no other documents present when the decedent signed the first sheet described above.

Accompanying the first page are seven smaller, primarily handwritten sheets of notepaper. These remaining handwritten pages, however, do contain printed words at the tops and bottoms of the pages. With respect to this printing, these latter seven handwritten pages are identical. At the tops of the pages the printed words read as follows: "Valley Automotive Warehouse, 7703 Enon Drive, Roanoke, VA 24019, Ask about our WATS Line, Call (703) 362–1241." The tops of these pages also contain a logo of this business entity. Other than the printed words most of these latter pages contain a column of names and a corresponding column of numbers in the decedent's handwriting along with other handwriting of the decedent. There are no dollar signs preceding the numbers and the punctuation appears to be erratic decimal points. There are interlineations through some of the names and numbers on some of the pages. Two of the seven pages contain what appear to be the signatures of the decedent. Furthermore, there are dates on some but not all of the seven pages. The dates range from "2–13–74" to "8–10–78."

The evidence adduced before the commissioner concerning the circumstances under which the above described documents were found and their proximity to each other is in dispute. It does not appear from the evidence that the eight pages were stapled together or otherwise attached to each other. There is evidence that these pages were perhaps folded together when discovered. There is no evidence on the order in which the pages were found. The order in which the pages were considered below is the order in which the pages were submitted for probate by the appellee bank and recorded in the fiduciary records of the county.

■ In the case of *In re Estate of Teubert*, 171 W.Va. 226, 298 S.E.2d 456 (1982), this Court set forth, *inter alia*, standards to determine the validity of holographic wills and general rules of construction for the testamentary disposition of property. We held in syllabus point 6 of *Teubert* that "[i]t is generally recognized that even though a will is sufficient in its formal prerequisites, it may fail if its terms are too vague and uncertain to enforce." We further held in syllabus point 7 of *Teubert*, however:

> The modern tendency is not to hold a will void for uncertainty unless it is absolutely impossible to put a meaning upon it. The duty of the court is to put a fair meaning on the terms used and not, as it is sometimes put, to repose on the easy pillow of saying that the whole is void for uncertainty.

*See generally* 79 Am.Jur.2d § 37 (Cum. Supp.1984).

We noted in *Teubert* that

[w]e have not had occasion to discuss this rule at any length although in *Hunt v. Furman*, 132 W.Va. 706, 711, 52 S.E.2d 816, 818 (1949), we said: 'A valid disposition of personal property requires a definite subject and object, and if either is uncertain, the defect is fatal.' *Arnett v. Fairmont Trust Co.*, 70 W.Va. 296, 73 S.E. 930 (1912); *Pack v. Shanklin*, 43 W.Va. 304, 27 S.E. 389 (1897).

171 W.Va. at 232, 298 S.E.2d at 462.[1]

■ We find it unnecessary to examine whether the irregularities described above concerning the execution and discovery of the purported will meet the formal requirements of a valid written or holographic

---

1. The will in *Teubert* that was held to be valid was described as follows:

The writing was wholly in the deceased's handwriting, with the exception of several typewritten lines located near the top and to the left of the page, which read, "(Revolking [sic] all writings or wills heretofore made by C.J. Teubert) All this for TRUST DEPT., First-Huntington Nat'l. Bk. Huntington, W.Va." Above the typewritten portion was handwrit-

will. We are of the opinion that, in any event, the contents of the documents, particularly the writings in the latter seven handwritten pages, are too vague and uncertain to enforce.[2]

Based upon the foregoing, the judgment of the Circuit Court of Mercer County is hereby reversed and this case is remanded to that court for further proceedings consistent with the principles set forth herein.

Reversed and remanded.

ten, "Last Will, Etc. 9/1/71," and below the typewriting was the remaining handwritten portion which began "Pay just debts & funeral Ex."

The writing devised certain real property to the Jehovah's Witnesses, directions for the creation of the "James H. & Alice Teubert Foundation," and directions to the foundation as to disbursements. The writing was signed at the bottom by the deceased, and one portion relating to free rent for certain tenants of the deceased was lined off and marked out with X's. Beside the marked-out provision was written *"Void"* and the deceased's signature.

171 W.Va. at 228–229, 298 S.E.2d at 458–59. The writing in question before the Court in *Teubert* is set forth in Appendix A of the opinion. *Id.* at 466.

**2.** It should be noted that the primary purpose of the will in *Teubert* was the charitable trust, that is, that the residue of the decedent's estate should go "to aid the blind." In syllabus point 11 of *Teubert* we held as follows:

The enactment of W.Va.Code, 35–2–2 (1931), considerably broadened our statutory

doctrine of *cy pres* by declaring that no conveyance, devise dedication, gift, grant or bequest to a charitable trust shall fail or be declared void for insufficient designation of the beneficiaries in, or the objects of, any trust or for any failure to name or appoint a trustee.

We noted in *Teubert* at 463:

We need not detail in depth the testator's specific directions for the Foundation's payments except to state that they are both named individuals and charitable organizations and represent extremely small amounts of money in comparison to the estate's total value of approximately three million dollars. The more significant fact is that the residuary bequest is "Residue to aid the blind only." Of key legal significance is that the residuary bequest causes the Foundation to be primarily a charitable trust and consequently its dispositive pattern is aided by the doctrine of *cy pres,* which is embodied in W.Va.Code, 35–2–2.

It is clear, however, that primary purpose of the purported will now before us was not a charitable distribution of property. Therefore, the holdings in *Teubert* with regard to the *cy pres* doctrine are not dispositive of this action.