342 S.E.2d 194

GUARANTY NATIONAL
BANK, exec., etc.

v.

Lewis MORRIS, et al., Defendant
Below, and Virginia Nichol,
et al., Appellants.

No. 16487.

Supreme Court of Appeals of
West Virginia.

March 25, 1986.

· James W. St. Clair, Marshall & St. Clair, Huntington, for appellants.

Maxwell W. Flesher, Huntington, for appellees McCollister and Burris.

Kenneth H. Fisher, Fisher & Young, Huntington, for appellees.

PER CURIAM:

This is an appeal by Virginia Nichol, and others, from an order of the Circuit Court of Cabell County declaring that a certain holographic document, purporting to be the will of Lucy B. Eneix, was not, in truth, a valid will. The appellants claim that the document was a valid will and that it should be construed so as to establish certain individuals as the residual legatees of Lucy B. Eneix' estate. While we believe that the document is a valid holographic will, we find that it does not contain a valid residuary clause.

On June 7, 1982, Lucy B. Eneix, a widow who had no living descendants, died in Huntington, West Virginia. After her death a document purporting to be her will was presented to the County Commission of Cabell County and admitted to probate. It is undisputed that the document is in the handwriting of the decedent. The first page bears the title "My Last Will and Testament" and is dated April 30, 1982. At the bottom of the last page is Mrs. Eneix' signature.

On the first page there are three lists. The first list contains the names of a number of charities and has figures written after each charity's name. The second list sets out the names of a number of people related to Mrs. Eneix by blood and shows in parenthesis their relationship. After two of the names the remark "1,000" appears.[1] The third list bears the heading "nephews by marriage" and lists six individuals. After each name there are figures stating either "1,500" or "500." On the following pages specific items of property are mentioned in conjunction with the names of individual family members or classes of persons. For example, at one point, the document states: "To Margaret Crist, table lamp with English scene on

base, picture of sheep which belonged to my parents, all items she had given me." At another point the document says: "My cemetery lot to either be bought by family member or held. Do not desire anyone else buried there."

After Mrs. Eneix' death, the Guaranty National Bank, which was nominated executor in the document, filed a petition with the Circuit Court of Cabell County praying that the court construe the document and give directions as to the manner in which the decedent's estate should be distributed. After conducting hearings, the court ruled that the document was not a valid will and that the testatrix died intestate as to her entire estate. Essentially, the court concluded that the document failed to meet the statutory requirements for a valid holographic will in that it failed to demonstrate testamentary intent.

I.

On appeal the appellants contend that the trial court's ruling was incorrect in that the document did demonstrate testamentary intent. They rely principally on this Court's decision in *In re Estate of Teubert*, 171 W.Va. 226, 298 S.E.2d 456 (1982).

In the *Teubert* case this Court extensively examined the law in West Virginia relating to holographic wills. From the examination a number of legal points emerged. First, in syllabus point 1 the Court stated: "West Virginia Code, 41–1–3, provides that holographic wills are valid in this State if they are wholly in the handwriting of the testator and signed. The third and final requirement for a valid holographic will in our jurisdiction is that the writing must evidence a testamentary intent." Also, in syllabus point 3 the Court reiterated a long-standing rule that: " 'Technical words are not necessary in making testamentary disposition of property; any language which clearly indicates the testator's inten-

---

1. The second list, which is at the center of the residuary-clause issue in this case, states:

"Virginia NICOL (Niece)
Margaret CRIST (Niece)
Sandra AKERS (Great Niece)
Lucinda CRIST (GREAT NIECE)

ANNE ROTHGLEB (Great NIECE)
LAURA CRIST (Great NIECE)
PAUL BURRIS (brother)
MARY McCOLLISTER (sister) 1000.
MAUDE ZIMMERMAN (sister) 1000.
Robert B. Nicol (Great Nephew)"

tion to dispose of his property to certain persons, either named or ascertainable, is sufficient.' Syllabus Point 1, *Runyon v. Mills*, 86 W.Va. 388, 103 S.E. 112 (1920)." Finally, the Court discussed at some length the question of what evidence is admissible to prove testamentary intent. In syllabus point 4, the following conclusion was reached: "Where the words of a will are ambiguous as to testamentary intent, extrinsic evidence is admissible to prove the testator's intent."

In the case currently before the Court, there is no question that the document offered for probate is entirely in the handwriting of the testator and signed by her. In fact, the parties stipulate those points. The real issue before the Court is whether the document evidences a testamentary intent.

■ In the *Teubert* case the Court indicated that three characteristics of the Teubert document constituted formal indicia of testamentary intent sufficient to permit the introduction of extrinsic evidence on the overall question of intent. Those indicia were the facts that the Teubert paper first contained certain words typical of wills. The paper was headed "Last Will" and made remarks about the payment of just debts and funeral expenses. Secondly, the document was signed by the testator at the end, and, third, the document was dated. In the case presently before the Court, the document prepared by Mrs. Eneix contained similar language. First, it was headed "My Last Will and Testament"; it was dated; and it was signed at the end. Although it did not make provision for the payment of last debts or funeral expenses, it specifically stated "Guaranty Bank, Huntington, W.Va. Administrator." It also contained language relating to the prospective distribution of Mrs. Eneix' property. For instance, it contained such statements as: "My long diamond wedding set which I bought from Clara Wise's estate to be sold to member of family or to others", and "To Margaret Crist, table lamp with English scenes on base ..."

This Court is of the opinion that the wording of the Eneix document does give some indication of testamentary intent on Mrs. Eneix' part. In view of the indicia, the trial court should have, and properly did, permit the introduction of extrinsic evidence on the question of testamentary intent.

■ During the hearing in this case, a number of witnesses testified regarding Mrs. Eneix' remarks and activities around the time of her death. One witness, Maude Zimmerman, an elderly sister of Mrs. Eneix, testified: "She said to me the day she made the will, that she called me and she said I have been making my will today, and she felt awful bad, she was tired and she said, I've taken—she said Clara didn't leave anything to charity, but she said I have taken care of some charities." Nell Burris, Mrs. Eneix' sister-in-law, testified that the holographic document was found in Mrs. Eneix' bedroom in the place where she kept her tax and other important papers. Paul Burris, Mrs. Eneix' brother, testified that originally his sister had not intended to make a will, but a friend of hers, Beulah Sturm, had talked her into making one and that she had indicated that she had started writing a will before her death.

A fair reading of the extrinsic evidence indicates that the testatrix intended to make a will, that she expressed the intent around the time the holographic document in issue was drawn up. That evidence, in conjunction with the indicia of the document itself, is sufficient to establish testamentary intent, and that testamentary intent, in conjunction with the fact that the document was wholly in the testatrix' handwriting and signed by her, is sufficient under the rules established in *Teubert* to establish the document in question as a valid holographic will.[2]

## II.

In addition to contending that the document is a valid will, the appellants argue that the Court should hold that the parties

---

2. For a situation in which the facts militate against a finding of testamentary intent, see *First National Bank of Bluefield v. Cundiff*, 174 W.Va. 708, 329 S.E.2d 74 (1985).

after whose names there were no notations were the residuary beneficiaries of the estate. Essentially, they argue that the law disfavors intestacy and that a document should be construed to avoid intestacy by naming those individuals residuary legatees. They point out that the parties after whose names no notations were made were the natural objects of·the testatrix' bounty, and that the extrinsic evidence shows that Lucy B. Eneix looked after them when they were young, remembered them, and sent them gifts. They say they were the logical persons to be the residuary recipients of her estate.

The appellants, in effect, ask this Court to go beyond the simple construction of the language in the testatrix' will; they request that the Court add words to the document to convert bare references to certain individuals into residuary clauses.

This Court has repeatedly recognized that: "The true inquiry in the construction of a will is not what the testator meant to express but what the words he used do express." Syllabus point 6, *Weiss v. Soto*, 142 W.Va. 783, 98 S.E.2d 727 (1957). *See, Wooddell v. Frye*, 144 W.Va. 755, 110 S.E.2d 916 (1959); *Hunt v. Furman*, 132 W.Va. 706, 52 S.E.2d 816 (1949); *Wilcox v. Mowrey*, 125 W.Va. 333, 24 S.E.2d 922 (1943); *Wills v. Folz*, 61 W.Va. 262, 56 S.E. 473 (1907). But, of course: "In construing a will the intention must be ascertained from the words used by the testator, considered in the light of the language of the entire will and the circumstances surrounding the testator when he made his will." Syllabus point 7, *Weiss v. Soto, supra.*

Relating generally to the supplying of ·words to aid in the construction of a will this Court stated in syllabus point 2 of *Neal v. Hamilton Co.*, 70 W.Va. 250, 73 S.E. 971 (1912): "Supplying technical words is only permissible when the intention to be aided thereby is apparent beyond reasonable doubt, the purpose being to develop a defectively expressed intent. If from the words employed the testator's intent can not be gathered, words can not be supplied to disclose that intent, for it may not have been his intent." In a case

more analogous to the one under consideration, the Court specifically held that words should not be added to create a legacy where there is a total blank: "Extrinsic evidence may not ... be admitted to fill up a total blank, or to determine the person or property intended by the testator, where there is a total failure to designate any." *Farmers & Merchants Bank v. Farmers & Merchants Bank*, 158 W.Va. 1012, 1019, 216 S.E.2d 769, 773 (1975). *See also, Graham v. Graham*, 23 W.Va. 36 (1883).

This appears to be the rule elsewhere. For instance, in *In re Durkin's Estate*, 165 Misc. 366, 300 N.Y.S. 656 (1937), the court ruled that although a deceased apparently intended some benefit to a corporation named in the will, a gift was not effectuated where there was no expression in the will of what property or amount was intended to be given. Likewise, it was held in *In re: Spahr's Estate*, 210 Iowa 17, 230 N.W. 434 (1930), that where a paragraph in a will failed to describe property to be given to. legatees, the paragraph could not be given any effect.

The Court is of the opinion that the authorities discussed above dictate that the total failure of Mrs. Eneix to specify what the named persons were to receive renders the sections containing those persons' names wholly ineffective to transfer any property to those persons.

For the reasons stated, the ruling of the Circuit Court of Cabell County that the document in issue is not a valid will is reversed, and this case is remanded for further development not inconsistent with the principles discussed herein.

Reversed and remanded.