358 S.E.2d 775

**Merle SEIFERT**

v.

**Harley SANDERS.**

**No. 16817.**

Supreme Court of Appeals of
West Virginia.

May 15, 1987.
Dissenting Opinion July 14, 1987.
Rehearing Denied July 16, 1987.

Charles V. Wehner and Richard K. Wehner, Kingwood, for appellant.

Frank B. Everhart and David P. Brown, Kingwood, and William L. Frame, Morgantown, for appellee.

McHUGH, Justice:

This case is before this Court upon the appeal of Harley Sanders from a final order of the Circuit Court of Preston County. Pursuant to that order the appellee's motion for summary judgment was granted holding the holographic will of Sylvia M. Sanders "for naught" because it revoked provisions of the joint and mutual will, which she had executed with her husband, Willie S. Sanders, which on its face stated its irrevocability. All other questions were determined moot. This Court has before it the petition for appeal, all matters of record and the briefs of counsel.

The appellant is Harley Sanders, the son of Willie and Sylvia Sanders.

The appellee is Merle Seifert, the appellant's sister.

I

Willie and Sylvia Sanders, both of whom are now deceased, farmed some acreage in Preston County. On March 8, 1970, they executed a joint and mutual will [1] with the

---

1. We have defined a "joint and mutual will" to be one executed jointly by two persons with reciprocal provisions which shows on its face that the devises are made one in consideration of the other. *Wetzel v. Watson,* 174 W.Va. 651, 653, n. 1, 328 S.E.2d 526, 529 n. 1 (1985).

following provisions pertinent to our discussion of this case:

We, Willie S. Sanders and Sylvia M. Sanders, husband and wife, ... do hereby make, publish and declare this our joint will, to be irrevocable by either of us, unless both join in the revocation thereof, ...

FIRST: We will and provide that upon the death of either of us the survivor shall take and hold as his or her sole and entire property, with the power to dispose of the same, all of the real estate and personal property owned by the decedent at the time of his or her death.

SECOND: We further will and provide that at the death of the survivor all real estate and personal property of such survivor, and being the property which shall not have been disposed of, shall be divided into six equal shares and given to ... [certain named children and grandchildren].

. . . .

Subsequently, Willie S. Sanders died. Two months later, on March 23, 1973, Sylvia M. Sanders executed the following handwritten instrument:

This is a note for Harley S. Sanders to operate Willie S. Sanders Farm the way he thought best to operate it I Sylvia M. Sanders herd Willie tell Harley to keep his cattle here on the Farm and Plant and sow what ever he needed to do.

I Sylvia Sanders is Harleys mother and when I am done with the farm it is Harley's to take it and do whatever is Best to do.

Sylvia M. Sanders

Several years later, Sylvia M. Sanders died. The joint and mutual will was probated as her last will and testament. Harley Sanders subsequently petitioned to have the holograph admitted to probate. His petition was granted by the Preston County Commission, and the holographic will was admitted to probate.

## II

Neither the appellant nor the appellee question the validity of the March 8, 1970

joint will executed by Willie and Sylvia Sanders.

The appellant contends that the joint and mutual will devised the testator's real and personal property to the survivor in fee. The appellee, however, maintains that the joint and mutual will provided the surviving testator with a life estate in the real and personal property of the estate.

*W.Va.Code*, 36–1–11 [1931] provides:

When any real property is conveyed or devised to any person, and no words of limitation are used in the conveyance or devise, such conveyance or devise shall be construed to pass the fee simple, or the whole estate or interest, legal or equitable, which the testator or grantor had power to dispose of, in such real property, unless a contrary intention shall appear in the conveyance or will.

█ That statute, as it relates to the action now before us, provides that if any interest in real property is conveyed or devised to any person without using words of limitation, a fee simple shall pass to the grantee. In case of doubt, the creation of a fee estate rather than a lesser estate is clearly favored. The burden of proving the lesser estate is cast on the party asserting that the estate is less than a fee simple. 96 C.J.S. *Wills* § 809 at 235 (1957); *see also Cockrell v. Jones*, 275 So.2d 105, 107 (Miss. 1973); *Sheldon v. Lewis*, 13 Ohio Op.2d 297, 299, 158 N.E.2d 919, 922 (Madison County C.P.Ct.1959); *Weiss v. Broadway National Bank*, 204 Tenn. 563, 568, 322 S.W.2d 427, 430 (1959).

█ A fee simple may also be created if a lesser estate is not specified and the grantee is given a power of disposition. 96 C.J.S. *Wills* § 817 at 249 (1957); *see also Capers v. Jackson*, 503 S.W.2d 681, 682 (Tex.Civ.App.1973); *Quickel v. Quickel*, 261 N.C. 696, 698, 136 S.E.2d 52, 53–54 (1964). As stated in a leading treatise on future interests:

When a donee is given an interest by virtue of language which, standing alone, might be construed to create a life estate, and by the same instrument he is given a power of disposal, ... if the

language giving the interest does not specify the estate granted, and is accompanied by an unrestricted express power to dispose of the fee, or absolute interest, a construction to the effect that a fee simple or absolute interest has been created is proper....

L. Simes and A. Smith, *The Law of Future Interests* § 893 at 363 (2d ed. 1956); *see also Flynn v. Flynn*, 469 S.W.2d 886, 887 (Ky.1971); *Wenzel v. Menchaca*, 354 S.W.2d 635, 639 (Tex.Civ.App.1962); *Johnson v. Stark*, 585 S.W.2d 900, 904 (Tex.Civ. App.1979).[2]

In *Wooddell v. Frye*, 144 W.Va. 755, 110 S.E.2d 916 (1959), this Court concluded that a provision of a will which conveyed "all my property of [sic] both personal and real to my wife ... to be hers absolutely" vested in the wife an absolute fee simple estate in the real estate. The Court reasoned that the immediately subsequent provisions that "the use of all *all* the of which I may die seized and possessed for and during her natural life; and it is my will that after her death my said real estate shall *dsend* to any *in* my children if there be any living[,] share and share alike" (emphasis in original) were not as clear and decisive as the words creating the fee simple estate, and did not take away, limit or diminish the fee simple.

Similarly, this Court has held that "[w]here the plain intention of the testator, as gathered from a consideration of the entire will, was to create [a fee simple estate], [that estate] will not be defeated by a subsequent paragraph having for its purpose the disposition of a possible residuum on the death of the wife." Syl. pt. 2, *Totten v. Dawson*, 104 W.Va. 274, 139 S.E. 858 (1927).

This Court in *Totten* recognized that where an estate is devised to a person "generally or indefinitely," with a power of disposition, the grantee takes the property in fee simple. 104 W.Va. at 276, 139 S.E. at 858. A gift in fee simple may not be taken away, limited or diminished by a subsequent clause in a will, except by provisions which are equally as clear and decisive as the words of donation. *Wooddell v. Frye*, 144 W.Va. 755, 761, 110 S.E.2d 916, 920 (1959).

Thus, where an estate in lands is created by will, a fee simple results if a lesser estate is not clearly indicated by the language of the instrument. *Totten v. Dawson, supra;* 96 C.J.S. *Wills* § 810 at 234–35 (1957); *see also Tarr v. Newby*, 146 Colo. 296, 299, 361 P.2d 622, 624 (1961). A testator desiring to give a qualified estate instead of an absolute one must employ language clearly importing an intention to do so.

In the case before us, the testators' use of the language "sole and entire property" is significant. The term "sole" is defined as individual, separate or comprising one person. *Black's Law Dictionary* 1248 (5th ed. 1979). The phrase "entire property" has been utilized by this Court to more precisely define what constitutes a fee simple estate. *See Yeager v. Town of Fairmont*, 43 W.Va. 259, 261, 27 S.E. 234, 234 (1897).

Based upon the above, we hold that where in a joint and mutual will persons devised all their real and personal property to the survivor of them to take and hold as his or her sole and entire property and vested in the survivor the power to dispose of the same and the will further provided that at the death of the survivor, the property "which shall not have been disposed

---

**2.** These cases are illustrative of the lack of precision which arises when courts must construe testamentary language that is unclear or contradictory.

Essentially, there are two viewpoints. Both viewpoints start with the proposition that the court should effectuate the "intention of the testator." One viewpoint then surmises that because of the presence of a gift over, the first taker has something less than a fee simple abso-

lute. The other viewpoint emphasizes that because the testator has given an absolute power to dispose of the property by deed or will, his intention was to give the first taker an absolute fee. L. Simes and A. Smith, *The Law of Future Interests* § 1489 at 385–86 (2d ed. 1956). *See, e.g., Scott v. Smith*, 286 Ky. 697, 151 S.W.2d 770 (1941). In this case, we favor the second approach.

of" would become, in equal shares, the property of certain named children and grandchildren, the survivor received a fee simple estate in the property and the power to dispose absolutely of such property.[3]

The appellee in this case stresses that the estate devised to Sylvia Sanders constituted a life estate and that the power of disposal devised to her must have been executed during her lifetime to be a valid disposition of the property. Because Sylvia Sanders was devised a fee simple estate by the provisions of the joint and mutual will, she is also empowered to dispose of that estate by the execution of the holographic instrument.

An absolute power of disposal comprises not only conveyances inter vivos but also the power to dispose of the property by will if the grantee so wishes. 96 C.J.S. *Wills* § 897 at 340 (1957). Express language referring to the power of disposal is not necessary for its proper execution. Where there has been some reference in the will or other instrument to the property or any part thereof which is subject to disposal, that is a sufficient demonstration of an intended execution of the power of disposal. *See* L. Simes and A. Smith, *The Law of Future Interests* § 973 at 425 (2d ed. 1956).

Previously, this Court has recognized that a power of appointment to be exercised by a "written instrument signed, sealed, and acknowledged" may be executed by the holographic will of the person in whom the power was given. *Ruffner v. Broun*, 83 W.Va. 689, 98 S.E. 872 (1919).[4]

Depending upon the language used in an instrument by a grantor of a power to dispose of real and personal property, that power may be executed not only by a conveyance inter vivos, but that power may also be executed by will. In the case before us, it is clear by the language chosen in the joint and mutual will, that the intent of Sylvia and Willie Sanders was to entrust the surviving testator with "the power to dispose of ... all of the real estate and personal property owned by the decedent at the time of his or her death."

"W.Va.Code, 41–1–3, provides that holographic wills are valid in this State if they are wholly in the handwriting of the testator and signed. The third and final requirement for a valid holographic will in our jurisdiction is that the writing must evidence a testamentary intent." Syl. pt. 1, *In re Estate of Teubert*, 171 W.Va. 226, 298 S.E.2d 456 (1982).[5]

The holograph is wholly in the handwriting of the testator, Sylvia M. Sanders, and is signed. During the hearing on the petition to admit Mrs. Sanders' holographic will to probate, two witnesses who were familiar with her handwriting testified that the instrument was wholly in her handwriting and signed by her.

" 'In construing a will the intention must be ascertained from the words used by the testator, considered in the light of the language of the entire will and the circumstances surrounding the testator when he made his will.' Syllabus pt. 7, *Weiss v. Soto*, 142 W.Va. 783, 98 S.E.2d 727 (1957)." Syl. pt. 4, *Guaranty National Bank v. Morris*, 176 W.Va. 228, 342 S.E.2d 194 (1986). *Accord*, syl. pt. 2, *Butler v. Rader*, 155 W.Va. 838, 187 S.E.2d 627 (1972).

---

**3.** We note that the fact that personal property is included in the same clause with an absolute estate in real property indicates an intention to devise a fee in the personal property as well. *Wenzel v. Menchaca, supra.*

**4.** The terms "power of appointment" and "power of disposition" (power of disposal) have similar definitions and are frequently used interchangeably. *See, e.g.,* L. Simes and A. Smith, *The Law of Future Interests,* § 861 at 343–44 (2d ed. 1956).

**5.** *W.Va.Code,* 41–1–3 [1931] provides:

No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, and of each other, but no form of attestation shall be necessary.

■ Testamentary intent, the third requirement for a valid holographic will, is usually found in a will expressly either by the use of formal language ["I ... hereby make, publish, and declare this to be my last will and testament," *Black v. Maxwell,* 131 W.Va. 247, 253, 46 S.E.2d 804, 808 (1948)] or by informal language ["If I should die ... you transfer both savings and checking accounts to my sister," *Grace v. Klein,* 150 W.Va. 513, 515, 147 S.E.2d 288, 290 (1966)]. *In re Estate of Teubert, supra* at 461. However, a will requires no particular form of words to show testamentary intent. *Id.*

As this Court held in syllabus point 1 of *Runyon v. Mills,* 86 W.Va. 388, 103 S.E. 112 (1920): "[t]echnical words are not necessary in making testamentary disposition of property; any language which clearly indicates the testator's intention to dispose of his property to certain persons, either named or ascertainable, is sufficient." *Accord,* syl. pt. 3, *In re Estate of Teubert, supra.*

■ The words used by Sylvia Sanders are sufficient to demonstrate testamentary intent. The testator's language "when I am done with the farm it is Harley's to take it and do whatever is Best to do," evidences a testamentary intent to exercise her power to dispose of any or "all of the real estate ... owned by the decedent at the time of his ... death," as provided for in the joint and mutual will.

Sylvia Sanders executed the holograph two months after her husband's death. In the instrument itself she expressed her husband's desire to allow the appellant to "keep his cattle here on the Farm and Plant and sow whatever he needed to do."

We conclude that the reference by Sylvia Sanders in a holographic instrument to her farm by the words "when I am done with the farm it is Harley's ...," is sufficient to execute a power of disposal given to the testator by provisions in a joint and mutual will. In the event that there is any real or personal property remaining after the disposition of the farm to the appellant, according to the provisions of the joint and mutual will, the property "shall be divided into six equal shares and given to" certain children and grandchildren named as beneficiaries of the will. Thus, excluding the farm, which Sylvia Sanders devised to the appellant, any remaining real and personal property shall be divided equally among the named beneficiaries.

In syllabus point 2 of *Wetzel v. Watson,* 174 W.Va. 651, 328 S.E.2d 526 (1985), we held that "[a] joint and mutual will made pursuant to an agreement or contract is irrevocable if the survivor accepts the benefits provided for in the will, ..." In *Wetzel,* a husband and wife had executed a joint and mutual will leaving their entire estate to their son upon the death of the survivor of them. After the wife's death, the husband executed another will leaving a sizable portion of the estate to another grantee and the residue to his three grandchildren. This was done, of course, after he, as his wife's survivor, accepted the benefits provided for in the joint and mutual will.

The case before us is distinguishable from *Wetzel* in two respects. First, in *Wetzel,* the terms of the joint and mutual will and the husband's subsequent will were completely inconsistent and irreconcilable in their devises because the beneficiary had been changed. In the case now before us, the terms of the holographic instrument are not inconsistent with the provisions of the will and do not alter it. The probate of the holograph merely reduces the respective inheritance of some of the legatees, but that reduction was clearly authorized under the provisions of the joint and mutual will. Second, absent in *Wetzel* is a power of disposal. That absolute power of disposal in this case, discussed *supra,* empowered Sylvia Sanders to devise the farm to the appellant through the holographic instrument.

### III

It is well established that summary judgment is appropriate when there are no genuine issues of material fact in dispute and the matter can be decided by application of rules of law. *Southern Electrical Supply Co. v. Raleigh County National Bank,* 173 W.Va. 780, 782, 320 S.E.2d 515, 517

(1984); *Clendenin Lumber & Supply Co. v. Carpenter,* 172 W.Va. 375, 383, 305 S.E.2d 332, 340 (1983); syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963); *see generally W.Va.R.Civ.P.* 56.

The relevant facts cited above are undisputed. Although the appellant did not seek summary judgment in the trial court, before this Court the appellant requests a reversal of the trial court's ruling and judgment in his favor. *Cf. Southern Electrical Supply Co. v. Raleigh County National Bank, supra,* at note 5 thereof.[6]

In accordance with section II of this opinion, we conclude that summary judgment should have been entered in favor of the appellant, rather than the appellee.

For the foregoing reasons, the judgment of the Circuit Court of Preston County is reversed.

Reversed.

NEELY, Justice, dissenting:

I dissent to the majority's holding today simply because I find that their conclusions run contrary to the intent of both testators in their irrevocable joint will. It is reasonable for married couples to make wills where each leaves the surviving spouse property for life, with the power to invade the corpus, but providing that whatever is leftover shall pass to specific beneficiaries. The holding of the majority today is precisely what the Sanders feared would result if they did not enter into a joint will equally dividing their estate among their heirs. Both parties consented to this contractual arrangement and it is not for the court to allow the surviving spouse's later holographic will to change the intent of both the testators and create in the surviving spouse any more than a life estate:

"Wills should be construed with the view of determining the true intent of the

testator. The nature, character and extent of an estate created must be ascertained according to this intention as disclosed by the language of the entire will, taking into consideration the circumstances under which it was made, exclusive of the oral statements of the testator."

*Ferguson v. Patterson,* 191 F.2d 584 (10th Cir.1951).

The Sanders entered into their joint will with the specific intent of making sure that their children from former marriages would be taken care of by the surviving spouse and that the children would inherit the remaining property of the estate upon the death of the surviving spouse. Allowing only Mrs. Sanders' son to inherit the property deprives Mr. Sanders' children of their rightful inheritance as intended by both testators in their joint will.

I recognize the majority's rule that a will should be construed as conferring on a devisee the greatest estate that the terms permit and that when an estate is given in one part of a will in clear terms it cannot be taken away or cut down by later terms not equally clear. But, such rules are subordinate to the rule that every part of a will should be harmonized and given effect if possible so as to enforce the dominant intention of the testators manifested by the entire will. *Tutunjian v. Vetzigian,* 64 N.Y.S.2d 140 (1946), *affirmed* 299 N.Y. 315, 87 N.E.2d 275 (1949); *Burlington County Nat. Bank of Medford v. Braddock,* 24 N.J.Super. 462, 94 A.2d 868 (1953).

Two years ago, in *Wetzel v. Watson,* 174 W.Va. 651, 328 S.E.2d 526 (1985), we upheld the validity of a joint and mutual will that created a life estate and a remainder to the life estate's issue. The majority distinguishes *Wetzel* because the beneficiaries in the disputed will were inconsistent with the beneficiaries in the original joint will, while in Mrs. Sanders' holograph-

---

**6.** This Court has held that

[u]pon a hearing on a motion of one of the parties for summary judgment, after due notice, when it is found that there is no genuine issue as to any material fact and that the adverse party is entitled to judgment as a matter of law, the failure of such party to file

a motion for summary judgment does not preclude the entry of summary judgment in his favor.

Syl. pt. 5, *Employers' Liability Assurance Corp. v. Hartford Accident & Indemnity Co.,* 151 W.Va. 1062, 158 S.E.2d 212 (1967). *See also W.Va. Code,* 58–5–25 [1931].

ic will her son as sole beneficiary, was also named as a beneficiary in the original will. However, the narrowing of the beneficiary in the holographic will is inconsistent as it cuts off any inheritance of Mr. Sanders' issue that were named in the joint will. Accordingly, because the result reached by the majority today violates the intention of both testators that was clearly stated in their joint will, I dissent.