# CHARLESTON.

SARAH L. COLLINS *et als. v.* E. M. TREAT *et als.*

(No. 6485)

Submitted January 14, 1930. Decided January 21, 1930. (Rehearing denied March 3, 1930)

444

*S. A. Powell,* for appellees.
*Steptoe & Johnson* and *Stanley Morris,* for appellants.

MAXWELL, JUDGE:

On the 11th of June, 1919, William J. Collins and Sarah L. Collins, his wife, leased a tract of land in Ritchie county to E. D. Willis for oil and gas development. The lessee, together with E. M. Treat and E. W. Dunbar to whom he assigned certain interests in the lease, formed a partnership as E. M. Treat Oil & Gas Company and proceeded to drill and operate the land for oil and gas. A number of oil wells were drilled. These wells also produced what is known as casing head gas. The lease contained no provision with relation to such gas, and so, the grantors and Treat, Willis and Dunbar entered into a contract the 15th of November, 1920, which made provision for the marketing of such gas, but did not make provision for manufacture of gasoline therefrom before delivering the gas to purchasers, thereof. The parties then conceiving the idea that gasoline could be profitably extracted from the gas before the same was sold and delivered, entered into another agreement on the 7th of December, 1920. The pertinent part of that agreement reads:

"Whereas, the said parties hereunto of the first and second parts have decided and agreed to utilize said 'casing head gas' by first extracting the gasoline therefrom, if any, and then sell and market the gas remaining, after taking it through said process, to the best advantage or for the best price obtainable therefore, and the said parties of the first part to receive one-eighth of the net proceeds of all the money derived or received from any and all gasoline and gas so sold and disposed of aforesaid, and hereby authorizes and directs the said parties of the second part to dispose of said 'casing head gase' in the manner aforesaid, and account to the said parties of the first part for their equal one-eighth part of the net proceeds derived therefrom as above stated, and the parties of the second part to render to the parties of the first part a monthly statement of any and all money received from any such sale of gasoline and gas, and the parties of the first part shall have the right to verify the correctness of any such statement by examining the books or memorandum kept, by the party of the second part, in relations thereto, or in any other manner they deem proper, should they doubt its correctness."

The partnership thereafter constructed on the said tract of land a plant for the manufacture of gasoline as contemplated by the said last mentioned contract. William J. Collins died a few months after the plant was put in operation. This suit is prosecuted by his widow and heirs for an accounting under the said contract for casing head gas and gasoline produced and marketed thereunder subsequent to his death. The controversy centers largely around the gasoline. The circuit court held as contended for by the plaintiffs that they are entitled to "one-eighth ($\frac{1}{8}$) part of all the proceeds derived from the sale of gas and the gasoline manufactured or extracted therefrom since the death of said William J. Collins, less only the one-eighth ($\frac{1}{8}$) part of the expenses of marketing said gas and gasoline after said gas has been transported to and run through the said gasoline plant, and that no part of the cost of expenses of construction, operation and maintenance of this plant should be charged against the one-eighth

(⅛) interest of the plaintiffs in the proceeds derived from the sale of said gas and gasoline, * * *.'' From that decree the defendants appeal. They say that under the plain terms of the contract the plaintiffs' one-eighth of the proceeds from gasoline is subject to its proportionate share of cost of production.

The plaintiffs take the position that there is an ambiguity in the contract of December 7, 1920, and therefore it is proper for the court to consider parol evidence in determining the intention of the parties to the contract and particularly to show what was William J. Collins' understanding of the meaning of the phrase ''net proceeds'', and what had been said to him about the meaning of said phrase by one of the defendants after the said contract had been drafted by a scrivener employed by the defendants and before it was executed by Mr. and Mrs. Collins. Defendants deny that there is ambiguity and insist that the contract is plain on its face and must be construed and applied by its terms alone. If there is an ambiguity in said contract, is it latent or patent? ''A latent ambiguity arises when the instrument upon its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain.'' 22 Corpus Juris, 1192. It is made to appear from the facts dehors the instrument. The most common example of a latent ambiguity is where there are more than one person or thing of the same name or description employed in the instrument. In such circumstances parol evidence is admissible to relieve the uncertainty, and for that purpose even the declarations of a party to an instrument may be admitted in evidence. Jones on Evidence (2nd Ed.) sec. 454. But clearly we are not confronted with a latent ambiguity here because there is no collateral matter rendering the meaning uncertain. If there is ambiguity, it is patent and lies in the context of the contract. In such situation the problem is to be solved from the instrument itself ''taking it by its four corners,'' but in so weighing it, resort may be had to parol evidence ''to show the circumstances surrounding the transaction and the situation of the parties.'' 22 Corpus Juris, 1197. But it is to be borne in mind that such evidence, when bearing upon a patent am-

biguity, cannot be received as to statements of the parties themselves. The rule is clearly stated in point one of the syllabus of *Uhl v. Railroad Co.*, 51 W. Va. 106: "If a writing is not ambiguous, it must speak for itself by its words, without aid of any oral evidence; but if it is ambiguous, oral evidence is admissible to show the occasion of the contract, the situation of the parties, the circumstances surrounding them, their subsequent acts in executing the contract, in order to show their intention in making it; but evidence cannot be received to show their declarations, conversations or interlocutions before or at the execution of the contract." "The declarations of the parties, as to what they intended by the language they used, are inadmissible." *Lewis v. Flour & Feed Co.*, 90 W. Va. 471. See also, *Watson v. Buckhannon River Co.*, 95 W. Va. 165, 181. In *Smyth v. Realty Co.*, 97 W. Va. 40, we find the law thus succinctly stated by JUDGE LITZ speaking for the Court: "Of course, if the writing is not ambiguous it must speak for itself, by its words, without the aid of any oral evidence; but if it is ambiguous or doubtful of intention, oral evidence is admissible to show the occasion of the instrument, situation of the parties, circumstances surrounding them, and subsequent acts in executing the contract or deed, in order to ascertain their intention in making the paper." Clearly, therefore, in no view of the case can the court properly consider testimony of alleged declarations by, or of conversations with, any party to the contract of December 7, 1920, with relation to the meaning ascribed by them, or any of them, to the phraseology employed in the contract. The most that could possibly be considered would be evidence of the attendant circumstances. But let us recur to the above quoted language of the said contract. It provides that, the parties having agreed to utilize the casing head gas by first extracting the gasoline therefrom, the parties of the first part shall "receive one-eighth of the net proceeds of all money derived or received from any and all gasoline and gas so sold and disposed of." And that the leesees shall "account to the said parties of the first part for their equal one-eighth part of the net proceeds derived therefrom as above stated." Where is the ambiguity? The language is

simple and plain. It requires the lessees to account to the lessors for an equal one-eighth part of the net proceeds derived from all gas and gasoline sold and disposed of from the premises. That is all there is to it, and when that is said, all is said. "But if the intention of the parties to a written contract is plainly expressed and the contract is free from ambiguity, it will be enforced without restoring to parol proof of the surrounding circumstances." 10 Ency. Dig. Va. & W. Va., p. 717, and numerous cases there cited. "Of course, when the language used is clear, unambiguous and certain in its terms, the parties will not be allowed to give it a different meaning from that which it would ordinarily have." *Garret v. Patton,* 81 W. Va. 771, 776. The parties must be held to have intended what the contract says. The word "net" has a fixed and determined meaning. It means "clear of all charges and deductions; that which remains after the deduction of all charges or outlay, as net profit." Bouvier's Law Dict. "Net proceeds," as used in the contract under consideration, therefore, means that which remains from the proceeds of sale of gas and gasoline after deduction of all charges or outlay incident to the production and marketing thereof; that is, taking the casing head gas at the mouth of the well where it issues forth as an incident to the production of oil under a prior contract (oil and gas lease), it is required by the contract of December 7, 1920, that there be an accounting by the producers to the owners for one-eighth of the net proceeds from the gas, and from the gasoline made therefrom. It is to be noted here, however, that the defendants make no claim to deduction or charge because of capital investment. Whether such deduction might properly be made is therefore not before the Court for consideration, and we express no opinion thereon.

But it is said that the provision in the latter part of the above quoted portion of said contract requiring "the parties of the second part to render to the parties of the first part a monthly statement of any and all money received from any such sale of gasoline and gas * * *," is a practically useless thing if settlement is to be made on a basis of "net proceeds"; it is said that the parties must have intended the

requirement of monthly statements to be of practical value, else such requirement would not have been inserted in the contract; that the said requirement is compatible only with a settlement on the basis of ''gross receipts'' and that such should be held to have been the intention of the parties. We are unable to attach to the monthly statement provision the significance thus sought to be accorded it. The main or dominant purpose of the contract was to provide for the sale of casing head gas and gasoline made therefrom and to establish a basis of pay therefor. This was done without equivocation. The monthly statement provision is of secondary importance merely. It only undertakes to provide a method of procedure in ascertaining the amounts to be paid the lessors. Nor is the method thus prescribed·exclusive of other and more appropriate statements that may be furnished either voluntarily or under requirement of law. But taking the requirement as it stands we do not perceive that it is necessarily inconsistent with the ''net proceeds'' provision. In ascertaining the true amount of net proceeds each month the lessors might with all propriety desire to know the total amount received from sales. This, if supplemented by statement of the expenses to be deducted from the gross, would disclose the full situation to the lessors. Thus it appears that though the requirement for monthly statements of gross sales may not be complete and that it is not all to which the lessors may be entitled in the way of being informed of the business, the furnishing of such statements is in no sense inconsistent with the plain import of the former provision that settlement shall be made for one-eighth of net proceeds. The most that can be said is that inferences or deductions might be drawn from the latter provision inconsistent with the former. That makes no difference. ''Inferences and implications arising from the words of a contract yield to express provisions manifesting intention to the contrary thereof.'' *Berry v. Humphreys,* 76 W. Va. 668. But even if there were plain inconsistency or repugnancy between the provision for compensation on the basis of net proceeds and the subsequent provision with reference to the furnishing of monthly statements of total sales, the latter could in no sense control the

former. The dominant provision would control. "* * * if clauses of a contract are repugnant, the one which expresses the chief object and purpose of the contract must prevail, while clauses containing provisions subordinate to the chief object and purpose of the contract must give way." 2 Ruling Case Law 847. The principal or more important clause must prevail. II Williston on Contracts, sec. 624; Elliott on Con-tracts, Cum. Supp. 1913-1923, sec. 1515. Being of opinion that the contract is not ambiguous, we hold that the parol evidence which was introduced for the purpose of attempting thereby to establish the intention of the parties may not be considered.

There remains another matter of great importance. Soon after the death of William J. Collins and sometime prior to the institution of the present suit W. W. Collins, as administrator of the personal estate of said William J. Collins, instituted a chancery suit against E. M. Treat, E. D. Willis, W. W. Dunbar, and E. M. Treat Oil & Gas Company, who are of the parties defendant to the present suit, (the only other defendants now being the Citizens National Bank of Pennsboro and M. H. Broadwater, trustee), for the purpose of compelling an accounting by the defendants therein for the amount due under said contract of December 7, 1920, to the said William J. Collins at the time of his death on the 11th day of May, 1922. The trial court sustained a demurrer to said bill on the ground that Sarah L. Collins, widow of William J. Collins, deceased, was a necessary party plaintiff there-to, because she had joined with him in making the lease. Leave to amend was granted. Subsequently an amended and supplemental bill was filed by the said W. W. Collins, administrator, and Sarah L. Collins against the said defendants for the purpose already recited. Upon final hearing of that cause upon pleading and proof, the court, construing said contract, held that the plaintiffs were entitled to recover of and from the defendants the one-eighth of all the proceeds derived from the sale of casing head gas and gasoline prior to the death of the said William J. Collins, less the one-eighth part of the cost and expenses of marketing the same, without any deductions on account of cost of production. An order of reference

was then directed and executed and decretal judgment was entered by the court in favor of the plaintiffs for the amount ascertained to be due them by the commissioner in chancery under said reference. The defendants did not appeal from that decree. It is urged now by the plaintiffs that that adjudication is binding against the defendants in this suit, and that they are therefore precluded under the doctrine of *res adjudicata* from taking a position in this suit inconsistent with the adjudication of the trial court in the former suit. The defendants deny the applicability of the doctrine of *res adjudicata*, because they say, that the parties plaintiff here, except Sarah L. Collins, are not the same parties who were plaintiffs in the former suit; that in the former suit defense was made primarily against the claim of the administrator for the amount claimed to be due to William J. Collins at the time of his death, but that in this suit they are called upon to defend against a different claim, namely, that of the widow and heirs of the decedent; that neither the parties nor the subject matter are the same.

The doctrine of *res adjudicata* is a very proper and important principle of law, though technical in nature. Its purpose is to put an end to litigation, but it is to be applied in the furtherance of justice and not in destruction thereof. There are fixed requirements which may not inaptly be referred to as conditions precedent to its application. There must be concurrence of four things: "(1) Identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons, and of parties to the action; (4) identity of the quality in the persons for or against whom the claim is made." *Coal Co. v. Lumber Co.*, 98 W. Va. 698. In the light of these basic requirements there are two phases of the doctrine to which it is necessary to advert in resolving the question now in hand; first, a judgment or decree in a prior suit will not bind any person who was not a party thereto nor in privity with such party; and, second, the applicability of the doctrine is reciprocal, that is, if the parties interposing a plea of *res adjudicata* in a pending controversy would not be bound by a decision in the former case had it been unfavorable to their present contention, their opponents in the

present case will not be bound by the decision that was made. "To constitute a complete estoppel by former judgment, the estoppel must be mutual and such as would conclude the party pleading the same if the judgment had been adverse to him." *Bell* v. *Bell,* 84 W. Va. 307. William J. Collins' heirs, who, together with the widow, are the plaintiffs here, were not parties to the former suit, nor are they in privity with any party thereto. Therefore they are not bound by the decree entered therein. Since that decree is not binding upon them in this suit, and could not here be pleaded against them, it follows that it is not binding on their opponents herein. An adjudication for or against a personal representative in one suit is not binding upon heirs in a subsequent suit, because they do not stand in privity with the personal representative; they stand in privity with the ancestor only. This Court considered this principle many years ago and thus stated the rule in *Merchants' National Bank v. Good,* 21 W. Va. 455: "A judgment against the personal representative of an estate is not even *prima facie* much less conclusive evidence against a devisee or heir of such estate; and the fact that the same person may be both personal representative and heir or devisee does not constitute an exception to the rule." See also, *Laidley v. Kline,* 23 W. Va. 565, 578; *Saddler v. Kennedy,* 26 W. Va. 636, 640; and *Board v. Callihan,* 33 W. Va. 209, 228. Nor does Mrs. Collins occupy the same status here which she did in the former suit. She sues now as doweress; not so, formerly. From the foregoing consideration of the principles involved, it follows that the doctrine of *res adjudicata* is not applicable in this suit.

We therefore reverse the decree of the circuit court and remand the cause for further proceedings in accordance herewith.

*Reversed and remanded.*