JOHN BERNARD ROGERSON

*v.*

WHEELING DOLLAR SAVINGS AND TRUST CO., *etc.*

*and*

BROOKS ROGERSON, *et al.*

(No. 13584)

Decided March 9, 1976.

*G. Charles Hughes*, Guardian ad litem, *Raymond R. Hyre, Frederick E. Gardner, Rickey, Chase, Chase & Hyre* for appellants.

*Elba Gillenwater, Jr.*, Guardian ad litem, *Galbraith, Seibert & Kasserman* for unknown issue of Den Rogerson, and others, appellees.

*Jeffrey L. Miles* for Orville Rogerson, Jr., and others, appellees.

*Don A. Barr* for John Rogerson, and others, Grandchildren of Arch Rogerson, appellees.

*Arch W. Riley, Greg L. Cooey, Riley & Yahn* for John Bernard Rogerson, appellee.

*Ray A. Byrd* for Wheeling Dollar and H. S. Hutzell, trustee defendants.

*Landers P. Bonenberger* for Admr., Estate of Virginia Boatwright.

NEELY, JUSTICE:

This is an appeal concerning the construction of the will of one Thomas L. Rogerson. The Circuit Court of Marshall County held that (1) the trust created by the testator did not become a "dry" or "passive" trust at the death of the last life beneficiary entitling the remaindermen to immediate distribution of the trust estate, (2) the trustees have no right to accumulate income from the trust, (3) the testator used the terms "children" and

"issue" interchangeably to provide a *per stirpes* distribution of his estate, and (4) the attorneys' fees and court costs should be charged to the corpus of the trust. We affirm the circuit court's interpretation in all respects.

The testator, Thomas L. Rogerson, executed his will on May 9, 1946. He died on December 23, 1952, and his will was probated seven days later on December 30, 1952. The testator left his entire estate in trust, directing the trustees to provide life benefits for his wife and several friends. The will then instructed the trustees to continue management of the trust estate for a period of fifteen years beyond the death of the last surviving life beneficiary, and, at the end of that fifteen year period, to distribute the corpus. The last life beneficiary died on January 9, 1966 at the age of 102, which set the date of distribution of the corpus in January 1981.

This action was instituted on May 31, 1972 by John Bernard Rogerson, an elderly son of the testator's deceased brother, seeking immediate distribution of the principal and all accumulated income of the trust estate. The plaintiff alleged that the trust created by the testator had become a "dry" or "passive" trust as the last surviving life beneficiary had died and the two primary business concerns, over which the testator had given management authority to the trustees, had been dissolved. Therefore, the plaintiff argued that the trustees no longer had any obligations or duties with regard to the trust assets and, consequently, contended that the corpus and income should be distributed immediately rather than at the end of the fifteen year period set forth in the testator's will.

I

An active trust becomes passive when the active duties imposed upon the trustee by the terms of the trust all have been fully performed. At that point, the Statute of Uses executes the use and converts the equitable title of the beneficiary into legal title. *Scott on Trusts (3d*

*Ed.)* §69.2. The Statute of Uses in this State, *W. Va. Code*, 36-1-17 [1931], specifically provides:

"Whenever, by reason of any conveyance by written instrument or by will, the bare legal title to real or personal property is held by one person for the use or benefit of, or in trust for, another person mentioned or described in the instrument or will, and the holder of such legal title has no active duties of care or management or disposition of the property by reason of such trust, or has performed all such duties as were imposed upon him, the legal title to the same estate or interest which he had in the use of such property shall pass to and be legally deemed to be in the person for whose use or benefit or in trust for whom, the legal title to the property was so held."

The testator's will granted the following powers to his trustees:

"My said Trustees, except as hereinbefore otherwise limited, shall have full power and authority ... to manage, lease, rent, maintain, sell, convey, and reconvey, upon such terms and conditions as they, in their own uncontrolled discretion shall deem to be for the best interest of said trust estate, any part or all of the principal of said trust property ...; to invest and reinvest, from time to time, the proceeds of any such sale or sales, in such other stocks, bonds, securities, personal property and real estate, as they, in their own uncontrolled discretion, shall deem necessary and advisable for the best interests of said trust estate; and they shall not be limited in any manner to the class or classes of investments otherwise permitted by law. ... [I]t being my purpose to create a continuing power of sale in my said Trustees, to be exercised by them, in their uncontrolled discretion, as fully as I might have exercised my power to sell my property if I had lived ....

"In carrying out their duties as Trustees, it is my wish that my said Trustees shall vote the

stock which I own at the time of my decease, or which they may thereafter acquire, in the T. L. Rogerson Realty Company, and the J. C. Bardall Company, in such manner as to maintain said companies as going and operating concerns; but, this wish shall not be binding upon my said Trustees if they, in their opinion, shall not deem such course to be advisable and proper."

The J. C. Bardall Company and the T. L. Rogerson Realty Company were dissolved in 1954 and 1960, respectively. The last life beneficiary died in 1966. Therefore, the plaintiff argued that the trustees no longer had any active duties under the trust. However, only approximately one-half of the total trust estate consisted of stock of the two corporations; the other half consisted of real estate, stocks, and bonds which produced rent and income. The trustees were charged with the duty to oversee the management of this half of the estate as well as the two corporations. We hold, therefore, that this trust is not a "dry" or "passive" trust as the trustees have a continuing duty and obligation to manage a large portion of the trust assets. Consequently, the corpus of the trust may not be distributed until 1981 as the testator desired.

## II

Although we hold that the trust is an active trust and the corpus is not immediately distributable, the question still remains whether the *income* from the trust, which has been accumulated by the trustees since the creation of the trust, should be currently distributed. Generally in the United States, in the absence of a statute, a provision in a will for accumulation of income for a period within the Rule Against Perpetuities is valid. *Scott on Trusts (3d Ed.)*, §62.11. However, in the absence of express language of the testator-settlor directing or authorizing the trustees to accumulate income, or an implication fairly arising from the four corners of the trust document, a constructional preference exists against accumulation of trust income. *Restatement of the Law, Property*, §440. While cases were cited in the parties'

briefs from foreign jurisdictions holding contrary to the *Restatement* "preference," we can find no authority in West Virginia on that point. We are of the opinion that the better view of the law is to follow the *Restatement*, and as a careful reading of the will reveals no express or implied direction from the testator to accumulate income from the trust, the trust income accumulated from the date of the death of the last life beneficiary should be distributed immediately, and income accruing from now until the distribution of the corpus in 1981 should be distributed on a quarterly basis.

## III

Once these preliminary issues have been decided, we are brought to the primary issue of the case, namely, who are the beneficiaries? The difficulty in this regard arises from the testator's use of the words "children" and "issue" in his directions regarding division of the corpus.[1]

Item II(f) of the will provides as follows:

> "Upon the death of the last survivor among the natural persons hereinbefore named, as beneficiaries herein, my said Trustees shall continue to manage and control the trust estate then remaining in their hands, with all the powers, rights, and authority granted to them by this, my Will, for a further period of fifteen (15) years, at the end of which time they shall divide my said trust estate then remaining in their hands into four (4) equal parts, and distribute the same as follows:

---

[1]While we have determined that the corpus is not divisible until 1981, the *income* must be currently distributed in a manner consistent with the testator's directions for distribution of the corpus. Furthermore, while the class of heirs eligible to take at the distribution of the corpus will close and members of that class will be definitely ascertainable, we note that the class of heirs eligible to receive quarterly income payments is subject to change as new heirs are born and others die within the 15-year waiting period.

    a. One share to my brother, Edward C. Roger-
son, or his then surviving issue;

    b. One share to the then surviving children of
my deceased brother, Den Rogerson;

    c. One share to the then surviving children of
my deceased brother, Arch Rogerson;

    d. One-half share to George J. Stultz, if he is
then living; and

    e. One-half share to Sadie Marie Faulkner, the
granddaughter of my deceased sister, Mrs. Or-
lando Griffith, or her then surviving issue."

Technically, in West Virginia, "children" means only issue of the first degree, while "issue" means all lineal descendants. Appellants argue that in the construction of a will, technical words are presumed to have been used in a technical sense and should ordinarily be given their strict meaning. *Weiss v. Soto*, 142 W. Va. 783, 98 S.E.2d 727 (1957) at Syllabus Point 7. Appellees, on the other hand, argue that this rule is not absolute and when it appears from the context that another meaning was intended such words will not be applied in their technical sense. *Id.*

In determining which of two apparently contradictory rules to select, a court must look to the relative situation of the parties, the ties of affection subsisting between them, and the motives which would naturally influence the mind of the testator. *Poor v. Bradbury,* 196 Mass. 207, 81 N.E. 882 (1907). A construction which will disinherit the natural objects of the testator's bounty is not favored. *Conklin v. Davis*, 63 Conn. 377, 28 A. 537 (1893). In the end, however, it may be doubted whether any construction of a will is of much assistance other than the application of natural reason to the language of the instrument in an attempt to determine the intent of the testator. *Davis Trust Co. v. Elkins*, 114 W. Va. 742, 175 S.E. 611 (1934).

There is no indication that the testator desired to make differing provisions among the lineal descendants

of his siblings. The picture created by the entire will indicates that since he had no children of his own, the testator intended to benefit all lineal descendants of his brothers and sister. The will clearly indicates that the testator used the terms "children" and "issue" as words of purchase and not of limitation. Therefore, we hold that the words "children" and "issue" were used interchangeably to create a *per stirpes* distribution among all lineal descendants of the testator's siblings.[2]

## IV

Finally, we must determine from what source the attorneys' fees[3] are to be paid. This issue arises as a result of a clause in the will which specifically provided:

> "In the event of litigation arising, affecting any of the trust property or the interpretation and/or construction of this, my last will and testament, or in the event of doubt on the part of my said Trustees as to the interpretation or performance of this trust, they shall have the right to employ counsel of their selection, and to defray their and counsel's reasonable expenses, if any, and any court costs or other expenses imposed upon them in connection therewith, charging the same against the principal of the trust fund. Any legal or other expenses connected with litigation brought by one or more of the beneficiaries shall be charged against such beneficiary's or beneficiaries' share or shares of principal

---

[2]The original complaint contained an additional allegation that an adopted child of one lineal descendant should be entitled to take under the will; however, as the parties did not argue this point before the Court, we decline to make any ruling with regard to that issue.

[3]The argument was made that the fee awarded one attorney in this litigation was excessive and out of line from the fees awarded other attorneys of the numerous parties to this action. We find this allegation to be without sufficient merit to warrant discussion in this opinion and therefore all fees awarded in this matter shall stand.

and/or income, to the extent that his or their share or shares will bear said expenses, the balance thereof, if any, to be charged against the remainder of the trust estate."

A trustee is not compelled to act at his peril in the administration of the trust. He is entitled to the instructions of the court as a protection and the trustee can properly pay out of the trust estate the costs incurred in the application to the court for instructions, if he acted reasonably in making application to the court. *Scott on Trusts (3d Ed.)*, §259. Moreover, the testator envisaged such an eventuality when he included the provision in his will, *supra*, for such payment of legal expenses.

This suit was instituted by a potential beneficiary for construction of provisions in the testamentary trust which were subject to differing interpretations. The action can in no way be construed as a will contest. Both the law and the testator open the trust assets for payment of legal fees and litigation expenses. As the terms of the trust were indeed ambiguous, the trustees could have reasonably and justifiably brought a declaratory judgment action for interpretation and direction at no cost to themselves. The document in question definitely required interpretation, and the suit brought by the beneficiary in this case benefited all members of the class of beneficiaries provided for in the will. Consequently, it would be inequitable to charge the beneficiaries for the trustees' inaction. We hold, therefore, that all attorneys' fee, court costs and litigation expenses should be paid from the corpus of the trust assets.

Accordingly, the judgment of the Circuit Court of Marshall County is affirmed.

*Affirmed.*