368 S.E.2d 301

**TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, a Corporation, and Kelly Foundry and Machine Company, Inc.**

v.

**Karen D. BURKE, Brian K. Ferguson, David S. Ferguson, an Infant, Jeffrey R. Ferguson, an Infant, Diana Marie Lothes, Anthony D. Nelson and Donna K. Nelson, as Guardian of the Infants.**

No. 18013.

Supreme Court of Appeals of West Virginia.

March 11, 1988.

Richard W. Cardot, Elkins, for Brian K. Ferguson.

Vaughn R. Groves, Jackson, Kelly, Holt & O'Farrell, Charleston, for Transamerica Occidental Life Ins.

R. Mike Mullens, Elkins, Guardian ad Litem: for David & Jeffrey Ferguson.

George R. Triplett, Elkins, for Anthony D. Nelson.

McHUGH, Chief Justice:

This interpleader action is before this Court upon appeal from a final order of the Circuit Court of Randolph County, West Virginia. The appellant, Brian K. Ferguson, seeks our review on behalf of himself and Jeffrey R. Ferguson and David S. Ferguson. Based upon our review of the petition, all matters of record and the briefs and oral argument of counsel, we reverse and remand for a new trial.

## I

Richard Wayne Nelson ("the decedent") was married twice. From his first marriage he had three children, namely, Anthony D. Nelson, Diana Marie Nelson Lothes (Phares) and Karen D. Nelson Burke.

In 1972, the decedent married Donna Kay Nelson. She had three children from a previous marriage, namely, Brian K. Ferguson, Jeffrey R. Ferguson and David Shawn Ferguson. From 1971 until the decedent's death in 1986, the decedent, Donna K. Nelson, and her three children lived together as a family. The decedent and Donna K. Nelson had no children born of their marriage.

The decedent was covered under an employee life insurance plan and under an employee pension plan established by his employer, Kelly Foundry & Machine Company, Inc. Transamerica Occidental Life Insurance Company was the insurer for both plans. In 1976, the decedent in his "enrollment cards" designated the beneficiaries of the death benefits under both plans as follows: "50%—Donna K., 50%—children." The enrollment cards stated that if a beneficiary is not a relative, the complete address of the beneficiary was to be given. The decedent did not give any address for the beneficiaries designated by him.

Upon the decedent's death in July, 1986, life insurance benefits in the sum of $29,910.00 and pension benefits in the sum of $4,932.96 were due to the beneficiaries. The insurer subsequently paid fifty percent of these death benefits to Donna K. Nelson. The insurer intended to pay the remaining fifty percent of these death benefits equally to each of six individuals, namely, the three natural children of the decedent and the three stepchildren of the decedent. Anthony Nelson, one of the decedent's natural children, objected to this proposed six-way distribution and, through his attorney, notified the insurer by letter that he believed the term "children" in the beneficiary designation referred to only the three natural children of the decedent.

The insurer thereafter paid each of the three natural children one-sixth of these death benefits, totalling one-half of the remaining fifty percent. The insurer then deposited the other one-half of the remaining fifty percent with the Circuit Court of Randolph County ("the trial court") in an interpleader action to determine who was entitled to the proceeds in question. Two of the natural children of the decedent, namely, his two daughters, answered interpleader by averring that they had no objection to the decedent's three stepchildren's receiving the proceeds in question as "children."

The interpleader action was tried by the court without a jury. Documentary evidence was admitted which indicated that the decedent provided hospitalization insurance for his three stepchildren; that one of his stepchildren, Jeffrey R. Ferguson, had received "supplemental security income" benefits, taking into account the earnings of the decedent as "parent"; and that the decedent listed his three stepchildren, as well as his three natural children, as dependents on his federal income tax returns.

Two witnesses testified. A coemployee, a Mary Raines, testified that she was the custodian of the employee life insurance and pension plan records and that the decedent, upon or shortly after execution of the enrollment cards, had conversed with her about his intent as to which children were to be considered his beneficiaries under such plans. The attorney for Anthony Nelson, one of the decedent's natural children, objected to Mary Raines' testimony as to the content of those conversations. The trial court sustained this objection and refused to hear such testimony on the grounds that the same was inadmissible (1) under the "Dead Man's Statute," *W.Va. Code*, 57–3–1 [1937] and (2) as hearsay. The attorney for Brian K. Ferguson, the only one of the decedent's three stepchildren who had reached majority at the time of trial, objected on the record to this ruling of the trial court.

The second witness who testified was the widow of the decedent, Donna K. Nelson. She testified, over Anthony Nelson's attorney's continuing objection, that the decedent provided shelter, food, clothing and transportation for his three stepchildren, disciplined them as his own children and otherwise treated them as his own children. Mrs. Nelson also testified, over objection, that sometime in 1980 or 1981, the decedent and she contacted an attorney about the decedent's adopting his three stepchildren. Before the adoptions could be completed, the decedent was laid off from his job, and he decided, for financial reasons, not to pursue the adoptions until he was employed again.[1] The trial court ruled that all of these facts from Mrs. Nelson's testimony were irrelevant.

The trial court found, over the stepchildren's objection, that there was no admissible evidence to establish that anyone except the decedent's natural children, and

his wife, were to be beneficiaries under the life insurance and pension policies. The trial court held that, as a matter of law, the term "children" does not include stepchildren. The trial court consequently awarded the proceeds in question to the three natural children, and not to the three stepchildren.

## II

At the outset we observe that there is nothing in the group life insurance statute, *W.Va.Code*, 33–14–14 [1957], or in the group life insurance or pension policies in this case which restricts an insured's right to designate any person(s), including stepchildren, as beneficiary(ies).[2] *Columbian Mutual Life Insurance Co. v. Davis*, 35 Misc.2d 26, 228 N.Y.S.2d 843 (Sup.Ct.1962) (interpleader action by life insurance company to determine beneficiaries of life insurance; reputed wife and stepchildren of insured held to be beneficiaries, as that was intent of insured).

■ The statutory laws of intestate descent and distribution and the technical, common-law definitions of terms such as "children" are not *controlling* in construing a life insurance contract to determine the beneficiary(ies) thereof. *See, e.g., Turner v. Metropolitan Life Insurance Co.*, 56 Cal.App.2d 862, 865–66, 133 P.2d 859, 860, 861 (1943), *review denied* (Cal. Mar. 29, 1943). On the other hand, with reference to the beneficiary(ies), it has frequently been said that a policy of life insurance is testamentary in nature, and the rules for interpreting a will may guide the courts in ascertaining the legal effect of the clause in a life insurance policy designating the beneficiary(ies). *Equitable Trust Co. v. Epling*, 168 S.C. 494, 496–98, 167 S.E. 820, 821–22 (1933).[3]

---

1. The parties did not argue, below or here, the question of equitable adoption of the stepchildren by the decedent. *See* syl. pt. 2, *Wheeling Dollar Savings & Trust Co. v. Singer*, 162 W.Va. 502, 250 S.E.2d 369 (1978).

2. *W.Va.Code*, 33–14–14 [1957] provides that group life insurance proceeds are "payable to the beneficiary designated by the person insured, ..." The policies in this case stated that

"[a] participant may designate a beneficiary...."

3. *Accord,* syl. pt. 4, *Chartrand v. Brace*, 16 Colo. 19, 26 P. 152 (1891); *Continental Life Insurance Co. v. Palmer*, 42 Conn. 60, 65 (1875); *Supreme Council Catholic Knights of America v. Densford*, 21 Ky.L.Rptr. 1574, 1575–77, 56 S.W. 172, 173 (1900); *Union Mutual Association v. Montgomery*, 70 Mich. 587, 595, 38 N.W. 588, 592

In syllabus point 2 of *Davis Trust Co. v. Elkins*, 114 W.Va. 742, 175 S.E. 611 (1934), the Court held that "[t]he term 'children' in its primary sense, and in the absence of qualifying words and provisions, means issue of the first degree. On the other hand, such meaning may be broadened ..., if ... the testator so intended." The language of the will as a whole in that case showed that "children" included grandchildren. *Accord*, syl. pt. 3, *Rogerson v. Wheeling Dollar Savings & Trust Co.*, 159 W.Va. 376, 222 S.E.2d 816 (1976).

■ The term "children" ordinarily does not include stepchildren, but it may include stepchildren when a contrary intent is found from additional language or circumstances. *See New York Life Ins. Co. v. Beebe*, 57 F.Supp. 754, 757 (D.Md.1944) (applying California law) (interpleader action by life insurer; stepdaughter not shown to be "a child of mine," that is, of the insured). *See also Restatement of Property* § 289 (1940); 4 *Page on the Law of Wills* § 34.17 (Bowe–Parker rev. 1961 and Supp. 1987) (collecting cases); *Black's Law Dictionary* 217 (5th ed. 1979) ("Child"); 14 C.J.S. *Child or Children*, at 1107 (1939 and Supp.1987) (collecting cases).[4]

Courts have held that a stepchild was a "child," "orphan" or "relative" under the beneficiary-designation provisions of an agreement or statute involving death benefits. *See, e.g., Teppler v. Supreme Council of Royal Arcanum*, 61 N.J.Eq. 638, 47 A. 460 (1900) (applying Massachusetts law) (stepchildren are "relatives," as the term "relatives" for insurance purposes includes persons related by marriage, as well as by blood); *Hummel v. Supreme Conclave Improved Order Heptasophs*, 256 Pa. 164, 100 A. 589 (1917) (applying Maryland law) ("children" was intended to include all those persons who stood in that relation to the head of the household, whether or not related by blood; insured treated his stepdaughter as his child from her infancy);

*Renner v. Supreme Lodge of Bohemian Slavonian Benevolent Society of United States*, 89 Wis. 401, 62 N.W. 80 (1895) (applying Illinois law) ("orphans" not limited to those related by consanguinity).

A will construction case which is instructive here because of the similarity of the household relationships and of the circumstances surrounding the preparation of the document(s) is *Gehl v. Reingruber*, 39 Wis.2d 206, 159 N.W.2d 72 (1968). In *Gehl* the testatrix had one natural child and six stepchildren, that is, her husband's children from his previous marriage. The testatrix never adopted her stepchildren, but she reared all seven of the children from their infancy and treated all of them as her own children. She called them "my children" and they called her "mother." "The entire record is indicative of a family situation, of a mutual exchange of parent-child love, with Theresa Gehl [the testatrix] exercising all the disciplinary prerogatives of a parent. The only aberrant note in a completely usual family relationship was the fact that Theresa was not the blood mother of six of these children." 39 Wis.2d at 214, 159 N.W.2d at 75.

At the age of sixty-three the testatrix executed a form will, prepared by a layman, in which she left her property to "my beloved children—in even and equal shares." After the testatrix's death her natural child petitioned for construction of the will consistent with his claim that he, as the only natural child of the testatrix, was the sole devisee/legatee. The trial court ruled that the stepchildren, as well as the natural child, were intended to be included within the term "children."

In affirming, the Supreme Court of Wisconsin in *Gehl* concluded that it was critical to view the language from the perspective of the testatrix, and so it examined the circumstances surrounding the testatrix at the time the will was executed to determine

(1888); *Fitzgibbon v. Walcutt,* 126 Ohio St. 450, 454, 185 N.E. 837, 839 (1933); *Mutual Benefit Life Insurance Co. v. Cummings,* 66 Or. 272, 284, 133 P. 1169, 1171 (1913).

**4.** *See generally* 5 G. Couch, *Cyclopedia of Insurance Law* § 28:23 (2d ed. M. Rhodes rev. 1984); 7 *Words and Phrases,* "Child; Children—in Insurance" (1952); annotation, *Testamentary Gift to Children as Including Stepchild,* 28 A.L.R.3d 1307 (1969).

her intent as to the meaning of "children." Emphasizing the "usual family relationship" from the time of the stepchildren's infancy, as well as the fact that "children" was plural and made no sense if interpreted as applying only to the testatrix's sole natural child (the testatrix was well past child-bearing age when the will was executed), the court held it was clear that the testatrix intended for her stepchildren to be included within the term "children" in her will.

 The court in *Gehl* also stressed the fact that the will was drafted by a lay person, not by a lawyer; therefore, the testatrix's subjective meaning, not the technical common-law meaning, of "children" was clearly intended. If a will was drafted by one who is not a lawyer, a court will be more inclined to assume that the will was written in the language of the lay person and will be more inclined to give effect to the language of the will in accordance with the subjective sense employed by the testator or testatrix, and not according to the technical meaning of the language. 4 *Page on the Law of Wills* § 30.9, at 65 (Bowe-Parker rev. 1961 and Supp.1987) (collecting cases). The same principle applies to other documents which contain dispositions of property which are testamentary in nature, such as the beneficiary-designation clause of an insurance policy providing death benefits. *See* text accompanying note 3, *supra.*

This concept is important in the present case because the decedent executed the insurance enrollment cards, thereby designating the beneficiaries as including "children," without assistance or advice of a lawyer.

 Where the description of the beneficiary(ies) is ambiguous, the courts allow considerable latitude in the admission of extrinsic evidence to identify such beneficiary(ies). For example, if the description of the beneficiary(ies) can apply to either of two or more persons, parol evidence, even as to declarations of the testator or insured, is normally admissible in such a case of "equivocation" to determine who was intended to be the beneficiary(ies). *See*

*Hedrick v. Hedrick,* 125 W.Va. 702, 709, 25 S.E.2d 872, 876 (1943). A class description such as "children" ordinarily raises a latent ambiguity if there are, for example, stepchildren, so that evidence of the testator's or insured's relations with and attitude toward them is admissible to determine whether it was the testator's or insured's intent to include them in the gift. *See* 4 *Page on the Law of Wills* § 32.6 (Bowe-Parker rev. 1961 and Supp.1987) (collecting cases).

Our cases involving construction of wills are consistent with the principles just stated. " 'The cardinal rule in the construction of testamentary instruments is that a court should give effect to the intent of the testator.' Syl. pt. 1, *Reedy v. Propst,* 169 W.Va. 473, 288 S.E.2d 526 (1982)." Syl. pt. 1, *Bank of Raleigh v. Thompson,* 177 W.Va. 162, 351 S.E.2d 75 (1986). "In construing a will the intention must be ascertained from the words used by the testator, considered in the light of the language of the entire will and the circumstances surrounding the testator when he made his will." Syl. pt. 7, *Weiss v. Soto,* 142 W.Va. 783, 98 S.E.2d 727 (1957). *Accord,* syl. pt. 3, *Seifert v. Sanders,* 178 W.Va. 214, 358 S.E.2d 775 (1987); syl. pt. 4, *Guaranty National Bank v. Morris,* 176 W.Va. 228, 342 S.E.2d 194 (1986). If the meaning of certain language in a will is still not clear after examining the language of the entire will and the circumstances surrounding the testator or testatrix when he or she made the will, "extrinsic evidence" is admissible to resolve the ambiguity: " 'Extrinsic evidence to establish the intention of a testator in the disposition of his estate is admissible only when there is a latent ambiguity in the will.' Syl. pt. 1, *Weiss v. Soto,* 142 W.Va. 783, 98 S.E.2d 727 (1957)." Syl. pt. 2, *Bybee v. Kinser,* 170 W.Va. 392, 294 S.E.2d 195 (1982).

 In the present case the trial court concluded as a matter of law that stepchildren are not included within the meaning of the term "children." It therefore did not consider the evidence of the circumstances surrounding the decedent at the time he designated the beneficiaries of the

death benefits, specifically, the testimony of Mrs. Donna K. Nelson, the decedent's widow, as to the decedent's long-term care and discipline of his stepchildren as if they were of his own blood. For the reasons stated previously, this conclusion of law constitutes reversible error.

■■■■ The trial court also committed reversible error by refusing to admit the proferred extrinsic evidence, specifically, the testimony of Mary Raines, a coemployee of the decedent, as to the decedent's expressions of intent, to resolve the latent ambiguity of whether the decedent intended to include his stepchildren, with his natural children, as beneficiaries of the death benefits. The trial court's reliance upon the Dead Man's Statute was misplaced because Mary Raines was not a party to, and had no interest in, the action: "A witness who is not a party to an action[,] or has no interest in that action, is not precluded by *W.Va.Code,* 57–3–1 [1937], commonly referred to as the 'Dead Man's Statute,' from testifying with regard to a personal transaction or communication between such witness and a decedent." Syl. pt. 1, *Papenhaus v. Combs,* 170 W.Va. 211, 292 S.E.2d 621 (1982).

■■ The trial court's reliance upon the hearsay rule to exclude the testimony of Mary Raines, a coemployee of the decedent, as to the decedent's expressions of intent was also misplaced. The testimony, proferred to resolve the latent ambiguity as to the identity of the beneficiaries, would come within the exception to the hearsay rule set forth in *W.Va.R.Evid.* 803(3) for, *inter alia,* declarations of intent.[5] A declaration of intention is admissible to prove that the declarant had such intention. *Gault v. Monongahela Power*

*Co.,* 159 W.Va. 318, 327, 223 S.E.2d 421, 427 (1976).

*W.Va.R.Evid.* 803(3) is identical to *Fed. R.Evid.* 803(3). The notes of the advisory committee on the federal evidentiary rules indicate that Rule 803(3) is a specialized application of Rule 803(1), involving present sense impressions. These notes also indicate that the broad rule of admissibility of declarations relating to the execution, revocation, identification or terms of a declarant's will "finds ample reinforcement in the decisions, resting on practical grounds of necessity and expediency...." Professor Cleckley says much the same thing: "The basis for making these statements admissible is practical necessity[,] since usually these statements would be the only meaningful means of directly proving such facts." F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8.7(B)3., at 507 (2d ed. 1986).

The "existing state of mind" exception to the hearsay rule has been invoked in cases involving testimony as to the deceased insured's oral identification of intended beneficiaries of a life insurance policy, where the formal designation of beneficiaries is ambiguous. These cases have been decided both before the effective date of the federal evidentiary rules, *see, e.g., Krimlofski v. United States,* 190 F.Supp. 734, 746–47 (N.D.Iowa 1961), and after the effective date of such rules, *see, e.g., Lingham v. Harmon,* 502 F.Supp. 302, 306 (D.Md. 1980).[6] In such cases there is no apparent motive for the declarant, the insured, to misstate intentionally his or her intent as to the identity of the beneficiary(ies).

■■■ In accordance with these authorities we hold that where the formal designation of the beneficiary(ies) of a life insurance policy or of other death benefits is

---

5. *W.Va.R.Evid.* 803(3) recognizes this exception to the hearsay rule:

(3) *Then Existing Mental, Emotional, or Physical Condition.*—A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates

to the execution, revocation, identification, or terms of declarant's will.

*See also W.Va.R.Evid.* 803(24) (hearsay exception for other statements having equivalent circumstantial guarantees of trustworthiness).

6. *See generally* annotation, *Exception to Hearsay Rule, Under Rule 803(3) of Federal Rules of Evidence, with Respect to Statement of Declarant's Mental, Emotional, or Physical Condition,* 75 A.L.R.Fed. 170 (1985), § 6.

ambiguous in light of the circumstances at the time of such designation, a declaration of the insured as to whom he or she intended to be the beneficiary(ies) is admissible as evidence of such intent under the exception to the hearsay rule for declarations of intent, *W.Va.R.Evid.* 803(3).

Based upon all of the above, the final order of the trial court awarding the proceeds in question to the decedent's natural children is reversed, and the case is remanded for a new trial in accordance with the principles set forth in this opinion.

Reversed and remanded.