540 S.E.2d 170

**Louis J. KOPF, Jr., Plaintiff Below, Appellant,**

v.

**Scott LACEY, Defendant Below, Appellee.**

No. 27756.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 4, 2000.

Decided Oct. 31, 2000.

Dissenting Opinion of Chief Justice Maynard Dec. 5, 2000.

Richard D. Dunbar, Esquire, Myers, Powell & Dunbar, Parkerburg, West Virginia, Attorney for Appellant.

David A. Sims, Esquire, Gregory R. Tingler, Esquire, Elkins, West Virginia, Attorneys for Appellee.

**PER CURIAM:**

This case is before the Court upon the final order of the Circuit Court of Ritchie County, granting summary judgment in favor of the Appellee, Scott Lacey. The circuit court found that a Release of All Claims agreement ("release") executed between the Appellant, Louis J. Kopf, Jr., and Barbara Lacey, Patrick Lacey, as well as their insurer, West Virginia Fire and Casualty Insurance Company, acted as a bar to the suit brought by the Appellant against the Appellee. Based upon a review of the parties' briefs and arguments and all other matters of record, we reverse and remand the lower court's decision for further proceedings consistent with this opinion.

## I. FACTS

On May 19, 1997, the Appellee was cutting down a tree on property owned by his brother and sister-in-law, Patrick and Barbara Lacey, at their request. The Appellant walked with the Appellee up a hillside to show him where the tree was located. After the Appellee cut the tree down, the Appellant walked down the hillside. The Appellee proceeded to trim the limbs off of the trunk of the tree. He then rolled the tree approximately eighty feet down a hill. The rolling tree bounced off a rock and shifted direction from that originally intended by the Appellee. The shift in direction caused the tree to roll over the Appellant's leg, breaking the leg.

Subsequent to the incident, the Appellant made a claim for his injuries against Barbara and Patrick Lacey through their insurer, West Virginia Fire and Casualty Company. The Appellant also made a claim for his injuries against the Appellee, through his insurer, West Virginia Insurance Company. Both of these claims were made prior to the Appellant instituting civil action against the Appellee.

The Appellant reached a settlement with Patrick and Barbara Lacey and their insurer for the amount of $18,000. The Appellant then filed a civil action against the Appellee on May 17, 1999. The Appellee had no knowledge of the settlement between the Ap-

pellant and Barbara and Patrick Lacey until after the civil suit against him was filed. Subsequent to the institution of the lawsuit against the Appellee, the Appellant, on June 2, 1999, executed a release reflecting that the Appellant

> does hereby forever release, acquit, and discharge Patrick Lacey, Barbara Lacey and West Virginia Fire & Casualty Company their subsidiaries, directors, officers, and all persons acting on behalf of the aforementioned entities, individually, and in their capacity as directors, officers, representatives, or otherwise, as to all claims asserted with respect to an incident occurring on May 19, 1997.

The Appellee filed a motion for summary judgment seeking dismissal of the action based upon the release executed as a result of the settlement the Appellant received from Patrick and Barbara Lacey and their insurer. The lower court refused to give any consideration to the affidavit of Gregory Schillace, the attorney who drafted the release, which was submitted by the Appellant in opposition to the summary judgment motion. In the affidavit, Mr. Schillace specifically states that "*[t]he Release was never intended to release claims which Louis Kopf had against Scott Lacey from the May 19, 1997 accident which resulted in injuries to Louis Kopf.*" The circuit court considered the affidavit parol evidence and refused to admit it, stating that "[t]he Release of All Claims is not ambiguous and is not subject to judicial interpretation." The circuit court then granted the Appellee's motion for summary judgment and dismissed the action against the Appellee, ruling that "[t]he Release of All Claims agreement releases all claims that were asserted as a result of the incident occurring on the 19th day of May, 1997, including the claims asserted against Scott Lacey." It is this ruling that forms the basis for the present appeal.

## II. ISSUE

The issue before the Court is whether the lower court erred in refusing to allow the admission of parol evidence because of its determination that the release was unambiguous and not subject to judicial interpretation. The Appellant argues that the circuit court's refusal to consider parol evidence, specifically the affidavit of Gregory Schillace, was plainly wrong. Further, the Appellant asserts that the circuit court's finding that the release in question was not ambiguous and was not subject to judicial interpretation was also plainly wrong. In contrast, the Appellee maintains that the circuit court did not err in granting the Appellee's motion for summary judgment, because there were no genuine issues of any material facts. Further, the Appellee argues that the circuit court did not err in refusing to consider the affidavit of Gregory Schillace because the release unambiguously expressed the intentions of the parties without resorting to parol evidence.

## III. DISCUSSION

We are guided by the following standard of review in determining whether the lower court properly entered summary judgment in this case: "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Moreover,

> " ' "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992)."

Syl. Pt. 2, *Painter*, 192 W.Va. at 190, 451 S.E.2d at 756.

The Appellant first argues that the Appellee was not permitted to assert the parol evidence doctrine with regard to the affidavit at issue because the Appellee was a stranger to the release. The Appellant relies heavily upon this Court's decision in *Haymaker v. General Tire Inc.*, 187 W.Va. 532, 420 S.E.2d 292 (1992), to support his position. In *Haymaker*, the lower court had granted summary judgment in favor of the appellees, General Tire, Inc., and Turnpike Ford, Inc., based upon a determination that a general release signed by the appellant, David Mi-

chael Matheny, settling his claim against the estate of Kevin D. Haymaker and Deanna L. Haymaker also released the appellees. The appellant was a passenger in a vehicle driven by Kevin D. Haymaker when a single vehicle accident occurred. Kevin D. Haymaker was killed as a result of injuries sustained in the accident. The appellant entered into a settlement agreement with the estate of Mr. Haymaker and Mrs. Haymaker and specifically released those two parties for $12,000 in consideration. *Id.* at 532, 420 S.E.2d at 292. The appellant later brought action against Turnpike Ford, Inc., the dealer who sold the vehicle to Mr. Haymaker's wife, as well as General Tire, Inc., the manufacturer of the tires on the vehicle. The appellant alleged that the accident was caused by a faulty left rear tire which exploded, causing Mr. Haymaker to lose control of the car. *Id.*

The appellees argued that the language of the release which provided that " 'all other persons, firms or corporations liable or who might be claimed to be liable ... [are released] from any and all claims, demands, damages, actions[,] causes of actions or suits of any kind or nature whatsoever' " released them as well and precluded the appellant's claim against the respective entities. *Id.* at 533, 420 S.E.2d at 293. The appellant sought to introduce the affidavit of a claims superintendent with Mr. Haymaker's insurer to show that "the release was only intended to release Mr. Haymaker, and was not intended to release any other person." *Id.* The trial court refused to consider the parol evidence.

■ In reversing the trial court's decision to preclude the admission of parol evidence, we held in the syllabus of *Haymaker,* that "[t]he parol evidence rule may not be invoked by a stranger to a release." *Id.* at 532, 420 S.E.2d at 292, Syllabus. We premised this holding, however, upon the lack of any type of relationship between the parties involved:

> Permitting the use of parol evidence to interpret a release in actions between a party to a release and a stranger thereto is also consistent with the rule in this jurisdiction that permits the use of parol evidence by an injured party to determine the intent of the parties to release *successive* tortfeasors in an agreement to release the

original tortfeasor. *See Thornton v. Charleston Area Medical Center,* 158 W.Va. 504, 213 S.E.2d 102 (1975).

187 W.Va. at 534, 420 S.E.2d at 294. We also found that the adoption of such a rule precluding a stranger to a release to invoke the parol evidence rule was consistent with West Virginia Code § 55–7–12 (1931), which provided:

> 'A release to, or an accord and satisfaction with, one or more joint trespassers, or tort-feasors, shall not inure to the benefit of another such trespasser, or tort-feasor, and shall be no bar to an action or suit against such other joint trespasser, or tort-feasor, for the same cause of action to which the release or accord and satisfaction relates.'

187 W.Va. at 534, 420 S.E.2d at 294 (quoting W. Va.Code § 55–7–12).

■ Even though we referred to the appellees in *Haymaker* as strangers to the release, the reason that they were strangers was because they were in a successive tortfeasor relationship to the original tortfeasor. This is quite easily established by application of the test previously used by this Court in *Sansom v. Physicians Associates, Inc.,* 182 W.Va. 113, 386 S.E.2d 480 (1989), to determine whether the tortfeasors were concurrent or successive. The test is simply whether "[t]he negligent acts of each of the defendants 'in point of time and place concur.' " *Id.* at 115, 386 S.E.2d at 482 (quoting Syl. Pt. 2, *Lewis v. Mosorjak,* 143 W.Va. 648, 104 S.E.2d 294 (1958)). The claim against the appellees in *Haymaker* sounded in product's liability. It was based upon the allegation that the appellees manufactured a defective product which was introduced into the market and which may have caused or contributed to the accident that occurred. The negligent acts of the appellees in *Haymaker,* therefore, clearly occurred prior to the negligent act of the driver of the vehicle involved in the accident. Moreover, unlike the present case, it was evident in *Haymaker,* that the appellees were not engaged in any business or activity on behalf of the other tortfeasor, decedent, Mr. Haymaker, when the accident occurred.

■ Similarly, in *Thornton*, we upheld the introduction of parol evidence in determining the intention of the parties in executing a general release as to whether that release governed successive tortfeasors or, in essence, strangers to the original release. We held in syllabus points five and six of *Thornton* that:

> The execution of a general release in favor of the original tort-feasor or dismissal with prejudice of a civil action against such tort-feasor is *prima facie* evidence of the intention of the injured party to accept the same as full satisfaction of all damages which naturally flow from the original injury, in the absence of language or circumstances in the release or dismissal indicating a contrary intention of the parties; but whether such release or dismissal is a bar to further action for malpractice against the treating physician or hospital providing care is a question of fact to be answered from the intention of the parties.

> To determine the intention of the parties with reference to release of successive tort-feasors, the injured party is entitled to introduce parol evidence to explain the terms of a contract of release in favor of, or the circumstances attendant to a dismissal with prejudice of a civil action against, the original tort-feasor.

158 W.Va. at 505, 213 S.E.2d at 103, Syl. Pts. 5 and 6; *see Sansom*, 182 W.Va. at 115–16, 386 S.E.2d at 482–83 (recognizing that "once a successive tortfeasor relationship is found to exist, the injured party is entitled to introduce parol evidence with regard to the release to explain what was intended. This rule does not require, as does some ordinary parol evidence rule, that there be some ambiguity in the release.").

Given that our prior decisions in *Haymaker, Thornton* and *Sansom* all involve the issue of whether a release governs successive tortfeasors, those decisions are distinguishable and not dispositive of the instant appeal. Both parties agree that the property owners, Barbara and Patrick Lacey, and the Appellee were concurrent tortfeasors. The Appellee was acting on behalf of Barbara Lacey and Patrick Lacey in cutting down the tree. In other words, but for the Appellee's alleged negligence, the Appellant would not have had any claim against Barbara and Patrick Lacey. Because of this fact, the rule relating to successive tortfeasors as expressed in *Haymaker, Thornton* and *Sansom* is unavailable to the Appellant.

■ Therefore, in order to resolve this issue, we must turn to the general rules governing interpretation of written contracts in order to assess whether parol evidence may have been admissible due to an ambiguity in the release. This Court has repeatedly held that " '[a] valid written instrument which expresses the intent of the party in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.' Syllabus point 1, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962)." Syl. Pt. 1, *Melbourne Bros. Constr. Co. v. Pioneer Co.*, 181 W.Va. 816, 384 S.E.2d 857 (1989). A latent ambiguity, which does not appear upon the face of the document, however, may be created by intrinsic facts or extraneous evidence. To resolve a latent ambiguity, parol evidence may be admitted. *See Black's Law Dictionary* 794 (5th ed 1979). As this Court previously held in syllabus point two of *Snider v. Robinett*, 78 W.Va. 88, 88 S.E. 599 (1916):

> To enable the court to construe a deed or other writing, ambiguous on its face, it is always permissible to prove the situation of the parties, the circumstances surrounding them when the contract was entered into and their subsequent conduct giving it a practical construction, but not their verbal declarations. But, if a latent ambiguity is disclosed by such evidence, such for instance as that the terms of the writing are equally applicable to two or more objects, when only a certain one of them was meant, then prior and contemporaneous transactions and collocutions of the parties are admissible, for the purpose of identifying the particular object intended.

*Id.*, Syl. Pt. 2; *see Farmers and Merchants Bank v. Farmers and Merchants Bank*, 158 W.Va. 1012, 1017, 216 S.E.2d 769, 772 (1975)(" 'A latent ambiguity is one that is not apparent upon the face of the instrument

alone and that is discovered when it is sought to identify the property, the beneficiaries, etc.' "); *Collins v. Treat*, 108 W.Va. 443, 446, 152 S.E. 205, 206 (1930) ("A 'latent ambiguity arises when the instrument upon its face appears to be clear and unambiguous, but there is some collateral matter which makes the meaning uncertain. . . .' The most common example of a latent ambiguity is where there are more than one person or thing of the same name or description employed in the instrument.") (citation omitted).

This Court has most frequently encountered latent ambiguities in the will context. For instance, in *Transamerica Occidental Life Ins. Co. v. Burke*, 179 W.Va. 331, 368 S.E.2d 301 (1988), we held that "[a] class description such as 'children' ordinarily raises a latent ambiguity if there are, for example, stepchildren, so that evidence of the testator's or insured's relations with and attitude toward them is admissible to determine whether it was the testator's or insured's intent to include them in the gift." *Id.* at 336, 368 S.E.2d at 306.

In *Belcher v. Big Four Coal & Coke Co.*, 68 W.Va. 716, 70 S.E. 712 (1911), however, this Court was presented with a latent ambiguity in a coal contract. In *Belcher*, an issue arose regarding whether the parties to a contract providing for an agreed-upon royalty of "$1.50 per 'railroad car, or its equal[ ]' " intended that only so much royalty was to be paid per railroad car, regardless of the quantity of coal that might be shipped in a car. *Id.* at 719, 70 S.E. at 713. We construed the agreement to mean that the parties to it had some definite size or capacity of coal car in mind by referring to a coal car or "its equal." At the time of the agreement, the parties to the agreement knew the railroad company shipped coal using cars of 30,000, 40,000, 50,000, and 60,000 pounds capacity. Because of this extrinsic fact, we found that the contract had a latent ambiguity regarding the unit of measurement which the parties intended. *Id.* at 719–20, 70 S.E. at 714.

In the instant case, the circuit court, in concluding that the language of the release was unambiguous, focused upon the language that provided that "all claims asserted with respect to an incident occurring on May, 19, 1997[,]" were released. The circuit court determined that this language included the claim asserted against the Appellee. We agree that there is no ambiguity apparent on the face of the release. When trying to identify what claims were actually released and as against whom, however, facts extraneous to this language in the release create a latent ambiguity. Barbara and Patrick Lacey, as well as the Appellant, certainly knew of the existence of the Appellant's claim against the Appellee and his insurer at the time the release was executed. It is also notable that there had been at least one settlement discussion between the Appellant and the Appellee's insurer, in addition to the discussions that occurred between the Appellant and Barbara and Patrick Lacey's insurer. In other words, all the tortfeasors knew that the Appellant had asserted claims against their respective insurers prior to the settlement that resulted in the release at issue. Yet, the release expressly failed to include or exclude the claim that the Appellant had against the Appellee. The circumstance that all of the parties involved, tortfeasors and claimant, knew that the Appellant had asserted a claim against the Appellee and had commenced a civil action against the Appellee before the release was signed is significant in light of the fact that West Virginia Code § 55–7–12 clearly indicates that the release of one joint tortfeasor shall not inure to the benefit of another or otherwise be a bar to a recovery against another unreleased joint tortfeasor. *See id.* This statute, which expresses the clear public policy in this state, should not be disregarded so lightly. Clarity, even specificity, as to claims and persons released, should be required to circumvent the rule expressed therein.

We also find that a latent ambiguity exists in the language of the release which discharges "Patrick Lacey, Barbara Lacey and West Virginia Fire & Casualty Company their subsidiaries, directors, officers, and all persons acting on behalf of the aforementioned entities, individually, and in their capacity as directors, officers, representatives, or otherwise. . . ." Again, at the time this release was executed, it was known to both

Patrick and Barbara Lacey, as well as the Appellant, that the Appellee not only was acting on behalf of Patrick and Barbara Lacey in cutting down the tree, but also that the Appellant had, indeed, sued the Appellee based on that fact. That the Appellee was not expressly named either by including or excluding him as a beneficiary in the release creates a latent ambiguity regarding whether the Appellee's negligence was truly intended to be encompassed by the terms of the release.

Accordingly, the lower court erred in its determination that the language of the release was so clear and unambiguous that the words used necessarily included a release of the claim against the Appellee. Pursuant to our case law, to resolve the latent ambiguity created by the circumstances existing at and before the time the release was signed, the lower court should have allowed the admission of parol evidence regarding the parties' intentions as to which individuals were to benefit from the release at issue. Further, as we have previously indicated in syllabus point five of *Thornton,* whether the release should be a bar to further action by the Appellant against the Appellee "is a question of fact to be answered from the intention of the parties." 158 W.Va. at 505, 213 S.E.2d at 103, Syl. Pt. 5, in part. Thus, on remand, the lower court should allow further development of the record regarding the parties' intentions as to which individuals were to benefit from the release at issue. Upon completion of this factual development, if no genuine issue of fact to be tried exits, then the case may be in a posture once again for summary judgment consideration. *See* Syl. Pt. 2, *Painter,* 192 W.Va. at 190, 451 S.E.2d at 756. If, however, genuine issues of facts to be tried are present, then a trial to determine the parties' intention regarding the release at issue may be necessary.

Based on the foregoing, the decision of the lower court is hereby reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

MAYNARD, Chief Justice, dissenting:

(Filed Dec. 5, 2000)

I dissent because I agree with the circuit court that the appellant unambiguously released any claims which he had against Scott Lacey.

The language of the release is simple and straightforward. It discharges Patrick and Barbara Lacey and all persons acting on their behalf as to all claims asserted with respect to the May 19, 1997 incident in which the appellant was injured. Scott Lacey was acting on behalf of Barbara and Patrick Lacey when he allegedly caused the appellant's injury. Therefore, Scott Lacey is also discharged as to all claims.

The majority, however, finds a "latent ambiguity" in the release. In other words, the majority believes that a collateral matter makes the clear language of the release uncertain. According to the majority, the collateral matter is that the appellant settled with Patrick and Barbara Lacey, filed a civil action against Scott Lacey, and then executed the release. The majority concludes from this that the appellant could not possibly have intended to release Scott Lacey from all claims since his claim against Scott Lacey was pending when he executed the release.

I disagree with the Court's analysis. A collateral matter which gives rise to a latent ambiguity consists of a fact or circumstance, extrinsic to the language of a contract, which makes the meaning of the otherwise unambiguous contractual language unclear. Inherent in this concept is that the alleged latent ambiguity is not created by a party to the contract at issue. In this case, however, the appellant's own conduct created the alleged latent ambiguity. For unknown reasons, the appellant acted inconsistently with his execution of the release, to his own injury, and now he desires to extract himself from the agreement. He should not be allowed to do so.

The general rule is that unambiguous contractual language expresses the intent of the parties and extrinsic evidence will not be admitted to contradict the unambiguous language. This general rule should be applied to the facts of this case. By applying the

latent ambiguity exception to the instant facts, I fear that the majority has unwittingly created a whole new way to attack valid contracts. Accordingly, I dissent.